DONNA SANTY, Adm'r of the Estate of Scott R. Santy, Deceased, Plaintiff-Appellant, v. JOHN J. BRESEE, Adm'r of the Estate of Mohammad M. Balazadeh, Deceased, *et al.*, Defendants (Joseph Brown *et al.*, Defendants-Appellees).
JOYCE OBERMILLER, Adm'r of the Estate of Cathy S. Santy, Deceased, Plaintiff-Appellant, v. JOHN J. BRESEE, Adm'r of the Estate of Mohammad M. Balazadeh, Deceased, *et al.*, Defendants (Joseph Brown *et al.*, Defendants-Appellees).

Fourth District   Nos. 4—83—0587, 4—83—0588 cons.

Opinion filed December 27, 1984.

Lakin & Herndon, P.C., of East Alton, for appellants.

Kurt P. Froelich, of Evans & Froelich, of Champaign, for appellees County of Champaign, Joseph Brown, and Archie Napper.

Hurshal C. Tummelson and Jeffrey W. Tock, both of Phebus, Tummelson, Bryan & Knox, of Urbana, for other appellees.

JUSTICE MILLS delivered the opinion of the court:

This is indeed a tragic case.

But the general rule is that law enforcement officials have no duty to protect *individual* citizens from crime—only such duty to the citizenry in *general*.

The trial court so held.

We affirm.

### THE FACTS

Scott and Cathy Santy, a young married couple, were shot and killed at their apartment in Savoy, Champaign County—allegedly by Mohammad Balazadeh, a neighbor.

The administrators of the Santys' estates then sued the five defendants involved in these consolidated appeals—the Champaign County sheriff and a deputy, the Champaign County State's Attorney and an assistant, and the county itself—for not protecting the Santys from Balazadeh. According to the complaints, Balazadeh had repeatedly threatened and harassed the Santys that summer, and on August

5, 1980, two days before the shootings, the county sheriff had arrested Balazadeh on charges arising from the Santys' complaints. But the Santys were not notified of Balazadeh's later release from custody, although they had been promised a warning of that.

### THE PLEADINGS

The complaints alleged that the Santys were the beneficiaries of a duty of protection that the defendants did not owe to the general public predicated on the following special circumstances: the Santys' requests for protection, the defendants' knowledge of Balazadeh's threats against the Santys, and the defendants' promises to warn the Santys of Balazadeh's release from custody.

The trial court dismissed these counts for failing to state causes of action, and the plaintiffs appeal. (Also named as defendants, but not involved in this appeal, are the administrator of Balazadeh's estate and the manager and the landlord of the apartment complex where the Santys and Balazadeh lived.)

Each of the defendants who is a party to this appeal was charged in five counts with negligence and recklessness; the latter was expressed as acting "in conscious disregard for the safety of the Plaintiff's decedent." Recovery was sought from each defendant for the losses of the surviving minors (Scott Santy was survived by one child and Cathy Santy by two), for the decedents' pain and suffering, for funeral expenses, and for punitive damages. This five-count pattern was repeated against each defendant, and all 25 of these counts contained identical allegations regarding the duty to protect the Santys and the special circumstances from which it arose; the only difference from one defendant to another was found in the list of that particular defendant's acts and omissions.

Defendant Napper, the deputy sheriff who according to the complaints was responsible for booking Balazadeh when he was taken into custody on August 5, allegedly breached his duty in two ways: by failing to obtain from Balazadeh "the correct background and identifying information," and by failing to discover Balazadeh's history of violent crime, which was on file.

State's Attorney Difanis and his assistant, Bailie, allegedly breached their duties in four ways: by failing, like Napper, to discover Balazadeh's history of violent crime, which was on file, by failing to supply the circuit court with the correct information on Balazadeh's criminal history, by failing to adequately protect the Santys, and by failing to warn the Santys of Balazadeh's release from custody.

Finally, the two remaining defendants, Sheriff Brown and Cham-

paign County, breached their duties in the five distinct ways already listed.

In dismissing these counts for failing to state causes of action, the trial judge held that the four personal defendants did not have a duty to honor requests for protection and did not have authority to promise to provide warnings regarding the release of defendants from custody. The court concluded that the decedents did not escape the general rule that law enforcement officials and agencies have no duty to protect individual citizens from crime. This conclusion also vitiated the plaintiffs' claims against the county, which were based on *respondeat superior*; additionally, the court held that the county could not be sued in tort and was not responsible for its employees' oral promises.

### THE LAW

In granting the defendants' motions to dismiss, the trial judge relied primarily on this court's decision in *Porter v. City of Urbana* (1980), 88 Ill. App. 3d 443, 410 N.E.2d 610. *Porter* held that the duty of law enforcement officers to preserve a community's well-being generally is owed not to specific individuals but rather to the community as a whole. The plaintiff there had been raped. She sued for both simple negligence and wilful and wanton misconduct, alleging that the police knew that the person who attacked her was responsible for six earlier rapes in the area that year and that they had sufficient information to justify arresting him. The defendants were the police officer in charge of the investigation of the series of rapes and the municipality that employed him.

The trial judge in *Porter* dismissed the complaint for failing to state a cause of action and this court affirmed, holding that law enforcement officers and agencies do not owe a duty to individual citizens to protect them from crime unless a special relationship exists between the individual and the agency or officer. As an example of circumstances that might give rise to this duty, *Porter* cited *Schuster v. City of New York* (1958), 5 N.Y.2d 75, 180 N.Y.S.2d 265, 154 N.E.2d 534, where the victim had provided the police with dangerous and well-known assistance and the crime resulted from that. The special relationship was based on reciprocity.

*Porter* also cited *Johnson v. Gallatin County* (7th Cir. 1969), 418 F.2d 96, *Bollinger v. Schneider* (1978), 64 Ill. App. 3d 758, 381 N.E.2d 849, and *Gardner v. Village of Chicago Ridge* (1966), 71 Ill. App. 2d 373, 219 N.E.2d 147, *appeal after remand* (1970), 128 Ill. App. 2d 157, 262 N.E.2d 829, cases in which the law enforcement agency's or officer's inadequate exercise of control over prisoners or suspects al-

lowed the crime to occur. Citing *Riss v. City of New York* (1968), 22 N.Y.2d 579, 293 N.Y.S.2d 897, 240 N.E.2d 860, *Porter* noted that a person's request for police protection does not by itself create the special relationship.

■ The existence of duty is a question of law. (*Mieher v. Brown* (1973), 54 Ill. 2d 539, 301 N.E.2d 307.) Its resolution depends not only on the foreseeability and likelihood of the harm that occurred, but also on the general costs and consequences of requiring a party to prevent or guard against its occurrence. (*Lance v. Senior* (1967), 36 Ill. 2d 516, 224 N.E.2d 231.) The rule that law enforcement agencies and officers are not liable to third parties for the failure to prevent crime reflects the judgment that to hold otherwise would impose an impossible burden on law enforcement agencies and officers, requiring them to carry out a myriad of difficult and frequently conflicting duties in guaranteeing the safety of every individual citizen. An exception to the rule of nonliability arises when the agency's or officer's undertaking transforms the *general* citizen into an object of *special* concern.

■ The plaintiffs alleged against each of the defendants involved in this appeal three separate circumstances on which to base the special relationship necessary for the existence of the duty: (1) a request by the decedents for protection from Balazadeh, (2) the defendant's knowledge of Balazadeh's threats against the decedents, and (3) the defendant's promise to warn the decedents of Balazadeh's release from custody. We conclude that the allegations here do not take the case out of the general rule that law enforcement agencies and officers do not owe individual citizens a duty to protect them from crime.

The first allegation, the *request for protection*, must fail. A person's request for police protection will not by itself create the special relationship (*Porter v. City of Urbana* (1980), 88 Ill. App. 3d 443, 410 N.E.2d 610), and it cannot be specifically his for the asking.

The second allegation, *knowledge of* Balazadeh's *threats* against the decedents, also fails to give rise to the special relationship. A law enforcement agency's or officer's knowledge of threats against a third person does not create any relationship between that person and the agency or officer. Furthermore, law enforcement agencies and officers acquire, record, and relay vast numbers of statements and reports in the course of carrying on their work, and basing the duty on this circumstance would add an intolerable burden to the ways in which such information is handled.

The third circumstance alleged, the *promises to warn* the decedents of Balazadeh's release from custody, is an insufficient undertak-

ing to serve as a basis for liability. In the absence of legislative action imposing the duty, we are not inclined to follow those cases in other jurisdictions that have found liability for the failure to provide promised warnings (*e.g., Fair v. United States* (5th Cir. 1956), 234 F.2d 288; *Williams v. United States* (D.S.D. 1978), 450 F. Supp. 1040; *Morgan v. County of Yuba* (1964), 230 Cal. App. 2d 938, 41 Cal. Rptr. 508). The defendants' promises to provide the warnings were gratuitous. Although a party may be liable for the way in which it performs a gratuitous undertaking (*Phillips v. Chicago Housing Authority* (1982), 89 Ill. 2d 122, 431 N.E.2d 1038; *Nelson v. Union Wire Rope Corp.* (1964), 31 Ill. 2d 69, 199 N.E.2d 769; Restatement (Second) of Torts sec. 323 (1965)), liability here would be based instead on nonfeasance—the failure to perform, rather than the nature of the performance. The Restatement expressly leaves open the question whether liability may follow the failure to perform a gratuitous promise, though it is skeptical of the distinction often drawn between misfeasance and nonfeasance. Restatement (Second) of Torts sec. 323, comment *d* (1965).

We find it appropriate not to find liability here, however, for the duty imposed would be against a *public* rather than a *private* officer or entity, and it would be for carrying on a function for which liability does not normally attach.

Reading the three allegations separately or together, we conclude that no special relationship arose between the plaintiffs' decedents and the defendants. The allegations do not show that the individual decedents were entitled to a degree of protection greater than that afforded citizens generally.

Affirmed.

WEBBER and TRAPP, JJ., concur.