JUDY HENDERSON, Indiv. and as Mother and Next Friend to Melanie Henderson, *et al.,* Minors, *et al.,* Plaintiffs-Appellants, v. CHARLES BRADFORD *et al.,* Defendants-Appellees.

First District (4th Division)   No. 86—3115

Opinion filed March 31, 1988.

William D. Maddux & Associates, of Chicago (William D. Maddux and Ellen L. Spahr, of counsel), for appellant Judy Henderson.

Neil F. Hartigan, Attorney General, of Springfield (Roma Jones Stewart, Solicitor General, and Bart T. Murphy, Assistant Attorney General, of Chicago, of counsel), for appellees Michael P. Lane, Kenneth McGinnis, Dennis Westbrook, Gerald Bolen, Melvin Franks, Edward Corrigan, Anthony Suggs, Thomas Palmore, Floyd Reaska, Randolph Jett, Michael Burnett, and Louis Lowery.

Cassiday, Schade & Gloor, of Chicago (Bradford D. Roth and Judith A. Schieber, of counsel), for appellees Allen T. Fort, Grove Roach, Edward Schultes, Emil Woolridge, and Charles Bradford.

JUSTICE JOHNSON delivered the opinion of the court:

Plaintiffs, Judy and William Henderson, appeal from an order of the circuit court of Cook County dismissing their second amended complaint against defendants and holding that defendants did not owe a duty to them under Illinois common law or 42 U.S.C. section 1983, the Civil Rights Act. Defendants are Charles Bradford, Edward Schultes, Edward Corrigan, Emil Woolridge, Grover Roach, Allen Fort, Dennis Westbrook, Gerald Bolen, Floyd Reaska, Randolph Jett, Shirley J. Casper, Melvin Franks, Michael Burnett, Tom Palmore, Anthony Suggs, Louis Oliver Lowery, Kenneth McGinnis (warden of Pontiac Correctional Center), and Michael Lane (Director of the Illinois Department of Corrections). Defendants are employees of the Department of Corrections, most of whom work at the Pontiac, Illinois, facility.

The sole issue on review is whether a special relationship existed between plaintiffs and defendants and whether defendants had a duty to protect plaintiffs and their children from escaped inmates.

We affirm.

Plaintiffs, who are residents of Pontiac, Illinois, were assaulted by Anthony Davis, an inmate who escaped from the Pontiac Correctional Center in the early morning of March 16, 1983. Davis was in maximum security, serving a 25-year sentence for armed robbery and burglary. In the course of his escape, Davis kidnapped Judy Henderson and her children, Melanie and William Henderson, Jr. He then forced Judy to drive him to Chicago and raped her in the presence of her children.

Plaintiffs, in their second amended complaint, allege that defendants were negligent in failing to protect them from danger of escaped inmates. Plaintiffs assert that they are entitled to relief under 42 U.S.C. section 1983. Specifically, they argue that defendants had a constitutional duty under the fourteenth amendment to protect them from assault by escaped inmates and that defendants breached that duty. This right to affirmative protective services, plaintiffs allege, arises from the special relationship between them as residents of Pontiac and the defendants. The court dismissed the second amended complaint, finding that the defendants did not owe a duty to plaintiffs. This appeal followed.

To support their contention, plaintiffs attempt to distinguish *Martinez v. California* (1980), 444 U.S. 277, 62 L. Ed. 2d 481, 100 S. Ct. 553, and *Bowers v. DeVito* (7th Cir. 1982), 686 F.2d 616, by contending that in these cases the defendants' conduct constituted acts of commission as opposed to acts of omission, as in the present case.

However, these cases support the dismissal of plaintiffs' section 1983 claim. *Bowers* involved the release of a mental patient with a violent history who murdered a woman upon his release from a mental institution. The court held that the "only duties of care that may be enforced in suits under section 1983 are duties founded on the Constitution or laws of the United States; and the duty to protect the public from dangerous madmen is not among them." (*Bowers*, 686 F.2d at 619.) In *Martinez*, the Supreme Court held that the members of the parole board, allegedly with reckless disregard for defendant's dangerousness, were not liable under section 1983 for damages caused when he was paroled and committed murder five months after his release. Contrary to plaintiffs' assertion, *Martinez* and *Bowers* are not distinguishable on the basis of the differentiation between a commission and an omission. Such a distinction is without merit.

█ █ █ The success of a section 1983 claim is not to be determined by whether the actor affirmatively took steps to release a dangerous person when he should not have been released or whether the actor negligently allowed the dangerous person to escape. "Section 1983 imposes liability on anyone who under color of state law 'subjects *** any citizen *** or other person *** to the deprivation of any rights, privileges, or immunities secured by the Constitution ***,' and thus applies only if there is a deprivation of a constitutional right. [Citation.]" (*Bowers*, 686 F.2d at 618.) Thus, the initial inquiry into a section 1983 action is whether the conduct complained of deprived the plaintiffs of a right, privilege, or immunity secured by the Constitution or laws of the United States. We find that plaintiffs were not deprived of a right or privilege secured by the Constitution or laws of the United States.

█ The concept of liberty granted in the fourteenth amendment does not include the right to basic public services. Nowhere in the Constitution is there a provision which requires governmental units to act when individuals of the general public are confronted with danger. (*Ellsworth v. City of Racine* (7th Cir. 1985), 774 F.2d 182, 185, *cert. denied* (1986), 475 U.S. 1047, 89 L. Ed. 2d 574, 106 S. Ct. 1265; *Jackson v. Byrne* (7th Cir. 1984), 738 F.2d 1443, 1446.) "The Constitution is a charter of negative liberties; it tells the [government] to let people alone; it does not require the federal government or the state to provide services, even so elementary a service as maintaining law and order." (*Byrne*, 738 F.2d at 1446; *Bowers v. DeVito* (7th Cir. 1982), 686 F.2d 616, 618.) Additionally, the contours of what constitutes a "special relationship" between a State and its citizens is unclear. However, the existence of a special relationship has only been found

where the plaintiff was involuntarily deprived by the State of any means to protect his constitutional rights. *Walker v. Rowe* (7th Cir. 1986), 791 F.2d 507, 511, *cert. denied* (1986), 479 U.S. 994, 93 L. Ed. 2d 597, 107 S. Ct. 597.

Plaintiffs here have failed to cite a single case, nor do we find one, which establishes a constitutional right to protection from assault by escaped inmates. Accordingly, numerous courts have held that State correction officials or other law enforcement officials do not have a constitutional duty to protect members of the general public from criminals. For example, in *Walker,* plaintiffs were correctional officers employed at Pontiac Correctional Center who were murdered or injured by inmates during a prison riot. The court held that plaintiffs did not have a fourteenth amendment right to protection from assault by inmates in their work place. The rationale behind the court's decision was that the plaintiffs were not drafted by the State to be guards; they enlisted and were free to quit at any time. Furthermore, in *Jones v. Phyfer* (1985), 761 F.2d 642, plaintiff was raped by a juvenile who had been released from a juvenile facility for the holidays while serving time for burglarizing plaintiff's home. The juvenile was released to the custody of his grandmother, who lived in proximity to the plaintiff. The court found that even if the State is remiss in allowing a person to be in a position to cause danger to a member of the public, the due process clause of the Constitution does not protect a member of the general public from criminals, at least in the absence of a special relationship between the victim and the State. See *Martinez v. California*, 444 U.S. at 284-85, 62 L. Ed. 2d at 489, 100 S. Ct. at 559; *Bowers v. DeVito* (7th Cir. 1982), 686 F.2d 616, 618; *Ellsworth v. City of Racine* (7th Cir. 1985), 774 F.2d 182, 187.

■ In the instant case, no such special relationship is created by virtue of plaintiffs' residence in the same municipality in which the Pontiac Correctional Center is located. "The state must protect those it throws into snake pits, but the state need not guarantee that volunteer snake charmers will not be bitten." (*Walker v. Rowe* (7th Cir. 1986), 791 F.2d 507, 511.) This same analysis from the *Walker* case is applicable here; the defendants did not require or force plaintiffs to reside or remain in Pontiac.

Hence, plaintiffs do not have a cause of action under 42 U.S.C. section 1983.

■■ ■ Plaintiffs further contend that defendants are not law enforcement officials; therefore, the "public duty doctrine" is inapplicable to the present case. Contrary to plaintiffs' assertion, a correctional official is defined by statute as a law enforcement official.

" '[L]aw enforcement officer' or 'officer' means any person employed by the State or local governmental entity as a policeman, peace officer, auxiliary policeman or in some like position involving the enforcement of the law and protection of the public interest at the risk of that person's life. This includes supervisors, wardens, superintendents and their assistants, guards and keepers, [and] correctional officers ***." (Ill. Rev. Stat. 1985, ch. 48, par. 282(a).)

Moreover, the public duty doctrine was adopted in Illinois in *Hullinger v. Worrell* (1876), 83 Ill. 220, where the Illinois Supreme Court held that public safety officials cannot be held liable to members of the general public for the criminal acts of escaped prisoners. At common law unless a special relationship exists between the defendant and the victim, there is no duty imposed upon the defendant to protect the victim from criminals. Illinois courts have adopted the following special relationships: common carrier-passenger, innkeeper-guest, business invitor-invitee, and custodian-ward. Restatement (Second) of Torts §314A (1965); *Hosein v. Checker Taxi Co.* (1981), 95 Ill. App. 3d 150, 154.

Plaintiffs suggest that the *Hullinger* decision was overruled in *Johnson v. Gallatin County* (7th Cir. 1969), 418 F.2d 96, and by *dicta* in the court's decision in *Porter v. City of Urbana* (1980), 88 Ill. App. 3d 443. We disagree. In *Johnson,* the Seventh Circuit merely expressed its opinion that if the Illinois Supreme Court were confronted with the question of the viability of the *Hullinger* decision it would hold that the decision is obsolete. This opinion or decision of the *Johnson* court is not binding upon this court. In *Porter,* a rape victim filed a claim against the City of Urbana and one of its police officers for failure to question or arrest the person who raped her. She alleged that the police department was aware that her offender committed six other rapes in the area that year. The *Porter* court held that the public duty doctrine was applicable and that law enforcement officers and agencies do not owe a duty to individual citizens to protect them from crime unless a special relationship exists between the individual and the agency or officer. Yet, relying on *Johnson,* the court stated in *dicta* that police officers may be liable for harm caused by escaped prisoners. *Porter,* 88 Ill. App. 3d at 446.

The *dicta* in *Porter* is inconsistent with the Illinois Supreme Court decision in *Hullinger,* with the public duty doctrine adopted by case law in this district, and with the recent decision by this court in *Santy v. Bresee* (1984), 129 Ill. App. 3d 658. In *Santy* a married couple were shot and killed by their neighbor who had repeatedly

threatened and harassed them for months. Two days prior to the shootings, the sheriff had arrested the neighbor on charges arising from the Santys' complaint. The sheriff failed to warn the Santys of the neighbor's release, as promised, and two days after his release the neighbor murdered them. Despite these overwhelming facts, the court held that the allegations of plaintiffs' decedents did not "take the case out of the general rule that law enforcement agencies and officers do not owe individual citizens a duty to protect them from crime." (*Santy,* 129 Ill. App. 3d at 662.) The court also noted that the policy underlying "[t]he rule that law enforcement agencies and officers are not liable to [individual citizens] for the failure to prevent a crime reflects the judgment that to hold otherwise would impose an impossible burden on law enforcement agencies and officers, requiring them to carry out a myriad of difficult and frequently conflicting duties in guaranteeing the safety of every individual citizen." (*Santy,* 129 Ill. App. 3d at 662.) Hence, we find that the *Hullinger* decision has not been overruled and under principles of *stare decisis* it remains the law in Illinois today.

Finally, plaintiffs' reliance on *Cross v. Chicago Housing Authority* (1979), 74 Ill. App. 3d 921, and *Johnson v. Village of Libertyville* (1986), 146 Ill. App. 3d 834, *rev'd on other grounds, sub nom Estate of Johnson v. Condell Memorial Hospital* (1988), 119 Ill. 2d 496, to support their contention that defendants owe a duty to them is without merit. The *Estate of Johnson* involved the liability of a private hospital for the harm caused by one of its mental patients rather than a law enforcement agency or officer. The *Cross* decision concerned a landlord/tenant dispute. Because the public duty doctrine is not relevant in these cases, they are inapplicable to the present case.

■ It is clear that under the public duty doctrine, which is applicable here, the defendants owe a duty to the general public and not to the individual plaintiffs. The doctrine is based upon those public policy considerations noted in *Santy* and mentioned above. (*Santy v. Bresee* (1984), 129 Ill. App. 3d 658, 662.) We also find that no special relationship arose between the plaintiffs and the defendants such that the individual plaintiffs were entitled to a degree of protection greater than that afforded citizens generally.

For the foregoing reasons, we affirm the judgment of the circuit court of Cook County.

Judgment affirmed.

JIGANTI, P.J., and McMORROW, J., concur.