Leonard LeROSE, Jr., as Independent Administrator of the Estate of Terrance A. Hogan, deceased, and Sharon Hogan, individually and as the mother and next friend of Terrance A. Hogan, deceased, Plaintiffs,

v.

CITY OF ZION/POLICE DEPART-MENT, an Illinois Municipal Corporation; Zion–Benton Township Board of Education, a local public entity, and Don Williamson, as agent/employee of the City of Zion/Police Department and/or as agent/employee of Zion–Benton Township Board of Education, Defendants.

No. 85 C 7167.

United States District Court, N.D. Illinois, E.D.

Oct. 4, 1988.

Gregory E. Rogus, Anne Lorenz, Leroy A. Garr & Assoc., Ltd., Gerald L. Maatman, Jr., John T. Rank, Baker & McKenzie, James E. Pancratz, Chicago, Ill., for plaintiffs.

Norman J. Barry, Roger J. Guerin, Rothschild, Barry & Myers, George E. Riseborough, Kevin F. Donohue, Kathleen M. Roche, Bradford A. Burton, Brydges, Riseborough Morris Franke & Miller, Thomas M. Harvick, David H. Brinton, Johnson, Cusack & Bell, Ltd., Chicago, Ill., for defendants.

### ORDER

NORGLE, District Judge.

Plaintiffs in this action are Leonard J. LeRose, Jr., as Independent Administrator of the Estate of Terrance A. Hogan, deceased ("decedent"), and decedent's mother Sharon Hogan. Defendants are the City of Zion Police Department ("City"), the Zion–Benton Board of Education ("Board"), and Police Officer Don Williamson ("Williamson"), in his separate capacities as an employee of the City and of the Board.

Before the court are two motions for summary judgment. The first is brought by defendants City and Williamson (in his capacity as an employee of the City). The second is brought by defendant Board and implicitly by defendant Williamson (in his capacity as an employee of the Board). For the following reasons, the first motion is granted and the second is denied.

On March 15, 1985, the Board authorized and sponsored an extracurricular activity after school hours (from 7:00 p.m. to 10:00 p.m.) which was called the Winter Carnival ("Carnival"). The Carnival was held in a Zion–Benton High School gymnasium. On the afternoon of March 15, 1985, at approximately 3:05 p.m., decedent and a fellow student battered a junior high school student at the Central Junior High School in Zion. At approximately 10:10 p.m. on March 15, 1984, decedent participated in a knife fight within the vicinity of the Zion–Benton High School campus and sustained fatal injuries. Police officials later determined that the knife fight stemmed from the battery approximately seven hours earlier.

Plaintiffs filed a four count Second Amended Complaint. Counts I and II are survival and wrongful death actions against the City and its employee/agent Williamson. Counts III and IV are survival and wrongful death actions against the Board and its employee/agent Williamson. Diversity jurisdiction is proper in this case pursuant to 28 U.S.C. § 1332(a)(1).

Rule 56(c) of the Federal Rules of Civil Procedure provides that a summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ. P. 56(c). A material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). A plaintiff cannot rest on mere allegations of a claim without any

significant probative evidence which supports his complaint. *Id.; see First National Bank of Arizona v. Cities Service Co.,* 391 U.S. 253, 88 S.Ct. 1575, 20 L.Ed.2d 569 (1968). "One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims and defenses." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323–24, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). Accordingly, the nonmoving party is required to go beyond the pleadings, affidavits, depositions, answers to interrogatories and admissions on file to designate specific facts showing a genuine issue for trial. *Id.*

Because jurisdiction over the parties' dispute is based on the diverse citizenship of the parties, *see* 28 U.S.C. § 1332, the court looks to Illinois' substantive law to resolve these issues. *See Erie R.R. Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). In determining the content of the law to be applied, the court's duty is to apply the state law that would be applied by the Illinois Supreme Court. *Green v. J.C. Penney Auto Ins. Co.,* 806 F.2d 759 (7th Cir.1986). Intermediate appellate court opinions are useful but not binding evidence of what the Illinois Supreme Court would do in a similar case. *Id.* With this standard in mind, the court considers each summary judgment motion in turn.

### Defendants City and Williamson

On and prior to March 15, 1985, the Board had an agreement with the City, whereby the City would supply one police officer who would act as a school/police counselor ("counselor") for the approximately 1,100 students attending the school. The City provided Williamson as that counselor. The terms of the written contract provided, *inter alia,* that the counselor work with the school principal in reducing juvenile crime, including early detection, and that the counselor work regularly from 7:30 a.m. to 3:30 p.m. and deviate from that schedule as asked "[d]ue to the uniqueness of school needs."

Williamson was not present at the Carnival or in the vicinity of the knife fight and was not asked by the school to attend the Carnival. Plaintiffs allege that Williamson should have advised school officials that his presence at the Carnival would be desirable due to threats of disturbances, that by failing to do this Williamson failed to exercise reasonable care owed to plaintiffs, and that the City, through its agent Williamson, is also liable to plaintiffs.

The first issue in evaluating plaintiffs' claim is whether the City and Williamson have a duty of reasonable care to plaintiffs. If there is such a duty, the next question is whether that duty was breached. For purposes of this motion, Williamson is an agent/employee of the City; the City does not seriously argue to the contrary, and there is at least a genuine issue on the point.

The general rule is that a City's failure to provide adequate police services to the general public is not actionable unless plaintiffs plead and prove a "special duty" to provide such protection. *Huey v. Town of Cicero,* 41 Ill.2d 361, 243 N.E.2d 214, 216 (1968). The existence of such a duty is a question of law to be determined by the court. *Comastro v. Village of Rosemont,* 122 Ill.App.3d 405, 78 Ill.Dec. 32, 35, 461 N.E.2d 616, 619 (1984). A "special duty" exists if (1) the municipality is uniquely aware of the particular danger or risk to which a plaintiff is exposed, (2) the complaint alleges acts or omissions by the municipality, (3) the acts or omissions are either affirmative or willful, and (4) plaintiff's injury occurs while he is under the direct and immediate control of employees or agents of the municipality. *Long v. Soderquist,* 126 Ill.App.3d 1059, 82 Ill.Dec. 80, 84, 467 N.E.2d 1153, 1157 (1984).

■ As the City's reply brief points out, plaintiffs make no attempt to show that the City and its employee Williamson owe them a special duty under the *Long* test. In fact, it is clear from the evidence that plaintiffs fail the *Long* test, as interpreted by the courts of Illinois. In *Santy v. Bresee,* 129 Ill.App.3d 658, 84 Ill.Dec. 853, 856–57, 473 N.E.2d 69, 72–73 (1984), the court stated that a person's request for protection and a law enforcement agency's or

officer's knowledge of threats against a person do not create a special duty. *Id.* While the *Santy* court did not mention the *Long* test, the court infers that the plaintiffs in *Santy* failed to meet the *Long* test. The factual allegations in this case regarding police knowledge of the danger, viewed most favorably to plaintiffs, are no more favorable to them than the plaintiffs in *Santy*. Plaintiffs in this case can only point to one incident indicating such knowledge sometime during the month prior to the Carnival, Williamson talked to three students concerning their desire to start a fight on school grounds at an unspecified time.[1] Plaintiffs also argue that Williamson should have predicted a fight at the Carnival because he was aware of five incidences of disturbances/fights at extracurricular events. This adds little to plaintiffs' claim. The general rule against police liability for failure to prevent crime does not contain an exception for high crime areas or situations. Furthermore, fist fights and "disturbances" are of a completely different nature from a knife fight.

Plaintiffs fail to meet the "direct and immediate control" requirement of the *Long* test. In *Galuszynski v. City of Chicago*, 131 Ill.App.3d 505, 86 Ill.Dec. 581, 475 N.E.2d 960 (1985), the plaintiff alleged that he was injured by a burglar because the City failed to promptly respond to his emergency call. The court dismissed the complaint because the plaintiff was not in the direct and immediate control of police personnel. *Id.*, 86 Ill.Dec. at 583, 475 N.E.2d at 962. In this case, it is undisputed that no police personnel were at the Carnival. Thus, decedent was clearly not under control of police personnel. Plaintiffs fail to meet the *Long* test.

■ Plaintiffs argue that the police force assumed a special duty by virtue of its contract with the school to provide a counselor. They rely primarily on *Comastro v. Village of Rosemont*, 122 Ill.App.3d 405, 78 Ill.Dec. 32, 461 N.E.2d 616 (1984). In *Comastro*, the court reversed the Cook County Circuit Court's granting of the de-

fendant's motion for summary judgment. The plaintiff was allegedly injured as a result of the defendant Village of Rosemont's negligent failure to use due care in patrolling the premises of the village-owned Rosemont Horizon during a rock concert. The Village had utilized its police to provide additional security at the concert. The court found that, as a matter of law, the Village had a duty of due care by virtue of its ownership of the stadium, and alternatively, under a police protection theory. *Id.*

The *Comastro* court held that the general rule is that a private person has no duty to protect another from criminal attack by a third person, but four "special relationships" are recognized as creating exceptions to that general rule. *Id.*, 78 Ill.Dec. at 35, 461 N.E.2d at 619. Those relationships are "(1) carrier-passenger, (2) innkeeper-guest, (3) business invitor-invitee, and (4) voluntary custodian-protectee under certain limited circumstances." *Id.* The court further noted that this rule applies to a public entity such as a municipal corporation when it is engaged in a non-governmental function such as operation of a public stadium or arena. *Id.* The court then found the Village had a duty to the plaintiff under this rule because the plaintiff was a business invitee. While the court did not specify whether the Village owed a duty to the plaintiff as a business invitee by virtue of its ownership and operation of the stadium or by its operation of the police force, this court interprets the opinion as imposing a duty on the Village as a business invitor by virtue of its operation of the stadium. Certainly plaintiff was not a business invitee of the police. Rather, he was a business invitee of the owner of the stadium.

The Village in *Comastro*, as owner of the stadium, is analogous to the school in this case. Thus, the *Comastro* finding of liability under the business invitee theory is not applicable to the City in this case. The duty of the school is discussed below.

---

1. In fact, the police conclusion that the knife fight was in retaliation for a fight which occurred earlier that day indicates that the knife fight was probably unconnected to the threats to which plaintiff refers.

The *Comastro* court held in the alternative that the Village had a duty under a police protection theory. *See id.,* 78 Ill. Dec. at 36–37, 461 N.E.2d at 620–21. The court held that the Village was not shielded by the general rule of non-liability of municipalities for failure to exercise general police powers, for reasons which are not completely clear. The issue is discussed in two paragraphs. *See id.* The first paragraph apparently treats the police as acting outside their official capacity, as the second paragraph begins, "Even if the police had been acting in their official capacity." *Id.,* 78 Ill.Dec. at 37, 461 N.E.2d at 621. The first paragraph discusses a "special duty owed to a specific individual or group," yet does not state the source of that duty. If the police officers were acting outside their official capacity, e.g., were in effect hired as a private security force for the Rosemont Horizon, this court knows of no basis for making the Village as operator of the police vicariously liable for the actions or omissions of those officers.

The second paragraph finds that a special duty arises when the police, in their official capacity, voluntarily undertake to provide a level of service greater than that afforded other residents. *Id.* (citation omitted). This rule is applicable to the City in the present case. However, the court, sitting in a diversity case, must predict how the Illinois Supreme Court would hold, and finds it unlikely that the Illinois Supreme Court would follow this rule.

As stated previously, decisions of the Illinois appellate courts are persuasive, non-binding authority on this court in diversity cases. The degree of that persuasiveness is lessened when the statements are dicta. This second finding in *Comastro* is *obiter dictum*; the court first found the Village liable as a business invitor, and then briefly stated an alternative ground for its holding. The alternative ground is not a decisive utterance. The court is aware of no Illinois case which imposes liability on police solely because they agreed to provide a higher level of service to a particular resident or group of residents.

The court finds that the *Comastro* dictum states a rule unprecedented in Illinois law; a rule which runs counter to the general trend of Illinois law. Furthermore, it is not carefully reasoned. Therefore, the court rejects it as persuasive authority.

The *Comastro* dictum states an unprecedented rule. It is not a mere elaboration on the *Long* rule, as the *Long* rule does not create liability in this case. Rather, it states a new exception to the general rule of police non-liability. The *Comastro* court stated that the "case of *Kraustrunk v. Chicago Housing Authority,* 95 Ill.App.3d 529, 51 Ill.Dec. 15, 420 N.E.2d 429 (1981), appears to indicate that a duty to protect against criminal attack will arise when the police are paid to provide a 'level of service greater than that afforded other [village] residents.'" *Comastro,* 78 Ill.Dec. at 37, 461 N.E.2d at 621. Yet *Kraustrunk* indicates no such rule. In *Kraustrunk,* an elevator repairman brought a complaint against the Chicago Housing Authority ("CHA") for negligently failing to protect him from a criminal attack while he was servicing an elevator at the Cabrini Green housing project. The CHA had paid the Chicago Police Department to increase patrols at the Cabrini Green housing project. The court assumed for the argument that the agreement between the police and CHA amounted to a voluntary undertaking by the police, and went on to hold that the allegations of the complaint were inadequate because they set out "no facts that would lead one to conclude that any action of the CHA or the police actually increased the risk of criminal attack over the level that would have been obtained without defendant's voluntary security measures." *Kraustrunk,* 51 Ill.Dec. at 17, 420 N.E.2d at 431. In fact, the police were not defendants in *Kraustrunk.* Thus, Illinois case law does not provide the rule stated in dictum in *Comastro.*

The court further notes the general reluctance of Illinois courts to find the police liable for failure to prevent crimes, as demonstrated by the opinions cited earlier in this opinion. *See, e.g., Santy; Galuszynski, see also Bilyk v. City,* —— Ill.App.3d ——, —— Ill.Dec. ——, —— N.E.2d —— No.

65735 (Ill. September 15, 1988). The pattern seems to be that the police are held liable when they create a danger, but not when they fail to prevent a danger. In *Huey v. Town of Cicero*, 41 Ill.2d 361, 243 N.E.2d 214 (1968), the first Illinois Supreme Court case stating the general rule of police non-liability, the court mentioned only one specific exception: the duty to protect a material witness from threatened injury. *Id.* at 363, 243 N.E.2d 214. A witness will often agree to testify only if promised police protection. Thus, the police in effect cause the witness to bring a danger upon himself he might not have otherwise created. Likewise, the court in *Galuszynski* gives one example of police liability. In that example, *Gardner v. Village of Chicago Ridge*, 71 Ill.App.2d 373, 219 N.E.2d 147 (1966), police requested the assistance of a witness in identifying four persons, and the witness was attacked in the presence of the police. The court in that case reversed the dismissal of the complaint because the plaintiff had been "called into a position of peril by the police." *Galuszynski*, 86 Ill.Dec. at 583, 475 N.E.2d at 962, citing *Gardner*. Likewise, *Kraustrunk* implied that the police might be liable if they created a danger greater than that which previously existed.

The rule stated in dictum in *Comastro* is therefore a significant departure from the general trend of Illinois courts. The court declines to follow such a departure unless the reasoning behind it is compelling. The court finds that the reasoning behind it is not compelling.

One could argue that the police, paid to provide additional security, are analogous to a private security force, and are therefore outside the general rule of police non-liability. The court rejects the analogy, for the simple reason that police officers providing additional security are still police officers. They are sworn peace officers, with statutory powers beyond those of private security guards while acting as employees of the police department. Also, the licensing requirements are more stringent. While one could argue differently where a party employs "moonlighting" individuals who happen to be police officers, so long as the police department is being paid, and the officers in question are drawing nothing beyond their regular police salaries, the general rule of police non-liability is applicable.

■ The next question is whether a voluntary undertaking by the police to provide additional security creates an exception to the general rule of police non-liability. If the police on their own initiative decided to increase the number of patrolling officers in a high crime area, certainly no exception to the general rule would be created. If the police had not decided to increase the patrols, but residents complained of high crime and asked for additional patrols, and the police complied, would that create an exception? The court thinks not. Even *Comastro* seems to imply that this would not create a duty.[2] Suppose the residents had asked for additional patrols, the police refused, the resident offered to pay the police department, and the police then agreed. By agreeing to this, have the police agreed that any time a crime is committed in that area, the victim may bring a cause of action against the police so long as he or she can allege that the crime could have been prevented if the police had exercised reasonable care? While the question is a difficult one, the court answers it in the negative.

The making of additional payments to the police department for additional protection does not change the nature of the police work. The general rule arises from an understanding that it is difficult to prevent crime and it is still more difficult to prove whether a crime could have been

---

**2.** In *Comastro*, it is impossible to determine whether the police force was "paid extra"; since the Village owned the stadium and the police, any payment would have been by itself to itself, and thus meaningless. The language of *Comastro* is ambiguous as to whether additional payment is crucial. Initially, without mentioning payment, it discusses only that the police were providing "special protection." *Comastro*, 78 Ill. Dec. at 36–37, 461 N.E.2d at 620–21. Also, the opinion never discusses whether additional payments were made. However, in discussing *Kraustrunk*, the court mentions a duty arising when the police are paid. Therefore, the court interprets *Comastro* as requiring payment for a special duty to arise.

prevented. The exceptions of witnesses in custody, and the rule in *Long* requiring special knowledge and direct control over the victim are situations where these difficulties are minimized; the police in those situations are by definition present and aware of the specific danger, so those elements need not be proven. In contrast, a general increase in police presence does not minimize these difficulties.[3]

In sum, the general trend of Illinois courts is against a liberal interpretation of the exceptions to the general rule of police non-liability for failure to prevent crime, and no compelling reasons support reversing that trend with a new exception. In fact, creation of a special duty in cases where additional police presence is paid for would have far-reaching effects. Numerous special events, festivals, and other situations make additional police presence appropriate. Whether sponsors of such events should pay for police protection is a political question, the answer to which should not be determined by a court-imposed duty, barring compelling reasons. Therefore, the court holds, as a matter of law, that Officer Williamson, as an employee of the City of Zion Police Department, and the City of Zion Police Department, did not owe a duty of reasonable care to plaintiffs. This makes resolution of the factual question of whether the duty was breached unnecessary, and summary judgment for the City and Williamson as an employee of the City is granted.[4]

### Defendants Board of Education and Williamson

Plaintiffs allege the following theory of liability. They allege that Williamson, as an employee of the school, should have advised school officials that his presence at the Carnival would be desirable due to threats of disturbance, that by failing to do this Williamson failed to exercise reasonable care owed to plaintiffs, and that Williamson, and the Board through its agent Williamson, is liable to plaintiffs.

The first question is whether Williamson was an employee of the Board. Under Illinois law,

> [t]he question as to whether or not the relationship of master/servant exists is dependent upon certain facts and circumstances. These facts include the question of the hiring, the right to discharge, the manner of direction of the servant, the right to terminate the relationship, and the character of the supervision of the work done. Unless these facts clearly appear, the relationship cannot be purely a question of law.

*Lilly v. County of Cook*, 60 Ill.App.3d 573, 578, 17 Ill.Dec. 946, 377 N.E.2d 136 (1978).

■ Neither the Board nor Williamson argues that Williamson was not an employee of the school district. Nor do they deny that the Board paid three-fourths of Williamson's salary, regulated his working hours on a daily basis, had the option of selecting and/or terminating Williamson as school/police counselor, and provided Williamson's office and office equipment. At the very least, these facts create a genuine issue as to whether Williamson was an employee of the Board.[5]

The next issue is whether Williamson, as an employee of the Board, owed plaintiffs a duty of reasonable care. The general rule, as mentioned earlier, is that a person has no duty to protect another from criminal attack unless one of four special relationship exists. Neither party discusses this issue in their briefs; each party seems to presume the existence of a duty absent any

---

3. The fact that payment is made to induce additional police presence could arguably create duties in contract, given the right contract in the right circumstances, but such a contractual obligation to prevent crime is neither alleged in this case nor likely to be found.

4. To the extent the analysis of *Comastro* in this opinion differs from that of its denial on August 1, 1986 of defendants' motion to dismiss, that earlier analysis is hereby modified.

5. The court held earlier that there is also a genuine issue as to whether Williamson was an employee of the City. The court need not determine whether Williamson could have been an employee acting within the scope of his duties for both the City and the Board, as the federal rules allow pleading in the alternative. *See* Fed.R.Civ.P. 8(a).

special exemption for school or public officials. The existence of a duty of reasonable care is a question of law. However, determinations of whether such a duty exists depend upon the facts of each individual case. Because the parties have not presented all the facts necessary for a determination of this issue, the court cannot hold as a matter of law that a duty did or did not exist. Therefore, for purposes of this motion, the court accepts the allegation of the Second Amended Complaint that the Board had a special duty to plaintiffs. *See LeRose v. Zion–Benton Board of Education, et al.,* No. 85 C 7167, slip op. at 7–8 (N.D.Ill. August 1, 1986) (denying motion to dismiss the amended complaint) ("Order").

■ Given this general duty, the court must determine whether the Board enjoys any immunity from liability. The Board presents two theories of immunity, and the court will consider each in turn.[6] First, the Board urges that it is immune from liability under the Illinois School Code, as interpreted by the Illinois courts. The Board points out that in *Kobylanski v. Chicago Board of Education,* 63 Ill.2d 165, 170, 347 N.E.2d 705 (1976), the Illinois Supreme Court held that § 24–24 and § 34–84a of the Illinois School Code "confer upon educators the status of parent or guardian to the students." *See also* Ill.Rev.Stat. ch. 122, pars. 24–24, 34–84a (1985). However, the limiting word in that phrase is "educator." No allegation is made that Williamson was an educator. In *Edmonson v. Chicago Board of Education,* 62 Ill.App.3d 211, 19 Ill.Dec. 512, 379 N.E.2d 27 (1978), the court held that a teacher's aide was not protected by the Illinois School Code ("the Code")

because she was not within the class protected by the Code: teachers, principals and certified educational employees. *Id.* The court's reasoning in *Edmonson* is persuasive and consistent with the plain meaning of the Code. *See also* Order at 4–7. In this case, no allegation is made that Williamson is a teacher, principal or certified educational employee, and it appears from the evidence that he is not. Therefore, Williamson, and his employer Board, vicariously, are unprotected by the Illinois School Code.[7]

The Board presents a second theory of immunity: the common law doctrine of public official immunity. This doctrine provides that public officials are not liable for discretionary acts performed within the scope of their authority and not resulting from malicious motives. *Mora v. State of Illinois,* 68 Ill.2d 223, 12 Ill.Dec. 161, 369 N.E.2d 868 (1977). Where the act is ministerial in nature, however, the official will be liable for the negligent performance of that duty. *Id.* Because almost any act involves a degree of discretion, Illinois courts have held that an act is discretionary when it is essentially governmental in character. *Watson v. Saint Annes Hospital,* 68 Ill.App.3d 1048, 25 Ill.Dec. 411, 415–16, 386 N.E.2d 885, 889–90 (1979). *See also Mora,* 68 Ill.2d at 233, 12 Ill.Dec. 161, 369 N.E.2d 868.

■ The Board argues that it is not the actions of Williamson, but rather the actions of the school principal, McKenzie, which the court should consider in determining the applicability of the public official immunity doctrine. Plaintiffs, however, charge Williamson, not McKenzie, with neglect. The Board argues that

---

6. The Board does not raise the Local Governmental and Governmental Employees Tort Immunity Act (the "Act"), Ill.Rev.Stat. ch. 85, para. 3–108 (1985), as a defense. From the facts as presented thus far it appears that the Board has waived this immunity by acquiring insurance. *See Kobylanski v. Chicago Board of Education,* 63 Ill.2d 165, 173–74, 347 N.E.2d 705 (1976); Ill.Rev.Stat. ch. 85, para. 9–103 (1985). Similarly, the City does not raise the Act as a defense, and it appears that it has also waived the Act through acquisition of insurance.

7. Board's reliance on *Booker v. Chicago Board of Education,* 75 Ill.App.3d 381, 31 Ill.Dec. 250, 394 N.E.2d 452 (1979) is unfounded. In *Booker,* the teacher and board were held not liable for the actions of a teacher-appointed student monitor. However, this holding was based on the finding that the monitor was not an agent of the teacher or board, and therefore, to the extent that the monitor was unprotected by the Code, the teacher and board were not vicariously liable for the acts of the monitor. In this case, for purposes of this motion, Williamson is considered an agent of the Board.

McKenzie alone exercised discretion in deciding not to assign Williamson to attend the Carnival. However, the court finds there is a genuine issue as to whether Williamson had a responsibility to request or suggest additional security at an upcoming scheduled school event. The written contract implies that unspecified school officials would request Williamson's presence; yet it does not explicitly state this. A reasonable jury could conclude from the deposition testimony and the lack of specificity in the contract that it became general practice for Williamson to request additional security as needed. Therefore, for purposes of this motion, the court will consider whether the actions of Williamson, not McKenzie, are actionable.

■ The next issue is whether Williamson, as an employee of the Board, is protected by the public official immunity doctrine. The key issue is whether Williamson's acts were discretionary or ministerial. In *Watson*, the court held that the medical acts of physicians and a nurse employed by The University of Illinois, a public school, were engaged in the same endeavors and functions as those performed by their counterparts in private practice, and were therefore ministerial. 25 Ill.Dec. at 415–16, 386 N.E.2d at 889–90. The court finds the reasoning of *Watson* to be both persuasive and relevant to this case. Williamson, as a non-certified employee of the Board hired for security purposes, was performing a function not essentially governmental in character. Rather, he was performing a function similar to that of a private security guard (or at least the court so finds for purposes of this motion), and therefore does not fall within the protection of the public official immunity doctrine.

Plaintiffs rely on *Fustin v. Board of Education of Community District No. 2*, 101 Ill.App.2d 113, 242 N.E.2d 308 (1968). In *Fustin*, the court dismissed a complaint alleging negligent supervision of a school basketball game. Apparently, the agents of the school board were certified educational employees or teachers; they were "coaching staff and other employees engaged in physical education." *Id.* at 119, 242 N.E.2d 308. The court dismissed the complaint, apparently on two alternate grounds. First, the defendant school board was immune under the Illinois School Code, and second, it was immune from liability under the public official immunity doctrine.

The court finds *Fustin* distinguishable from the present case. Because *Fustin* involved employees within the class protected by the Illinois School Code, the first basis for the holding is distinguishable, as explained earlier. The application of the public official immunity doctrine as an additional ground for the holding is also distinguishable because teaching is a governmental function. While private schools exist, provision of education is primarily a governmental function. The Illinois legislature has recognized this by enacting the School Code. The Illinois courts, by extending the application of the School Code to teachers acting in a disciplinary/supervisory role, recognize that role as a part of the teaching job, and therefore a governmental function. In contrast, when one hires a person to provide additional security (again, for purposes of the motion of the Board, Williamson is a Board employee), that person's actions are non-governmental in nature. In *Watson*, the court found that doctors perform a non-governmental function regardless of whether they are paid by a private or public body. Likewise, an individual hired for security purposes performs a non-governmental function.[8]

8. The court recognizes that it is drawing a fine distinction. Earlier, the court found that the police, even when paid to provide additional security, are within the general rule of police non-liability for failure to prevent commission of crimes. The court also holds that a police officer, hired by a school, performs a non-governmental function. The distinction lies in the identity of the employer. As a police employee, the police officer acts as a public servant. As an employee of another body, such as a school, the officer's duties are to that body, and therefore akin to a private security guard, and therefore non-governmental. Thus, the court rejects the security guard analogy as applied to Williamson as an employee of the City, but accepts it as applied to Williamson as an employee of the school. The court also recognizes that it has already stated that a doctor's function is non-governmental, regardless of the identity of the employer. The distinction is that a doctor's

To the extent *Fustin* and *Watson* offer conflicting interpretations of the doctrine of public official immunity, the court considers *Watson* to be more persuasive. *Watson*, the more recent case, discusses a generalizable standard. Also, *Fustin*'s application of the common law doctrine seems to be inextricably tied to its application of the School Code. Yet the School Code immunity is not applicable in this case.

■ Having found that, for purposes of this motion, the Board owed plaintiffs a duty of reasonable care, the final issue is whether there is a genuine issue as to whether the Board, through its agent Williamson, breached that duty. The court holds that a reasonable jury could find such a breach. Plaintiffs allege that Williamson was aware of at least one threat of an incident, and was aware of at least five prior incidents of student disturbances/fights at extracurricular school events like the Carnival. From this, a reasonable jury could conclude that Williamson, exercising reasonable care, should have recommended to school officials that he be present at the Carnival, and that his failure to do so constituted a breach of his duty. Furthermore, a reasonable jury could find that Williamson's absence was a proximate cause of decedent's injuries, and that the presence of an armed officer might have deterred the knife fight where the presence of teachers failed.

In sum, the motion for summary judgment of defendants City of Zion Police Department and Don Williamson, as an employee of the City of Zion Police Department, is granted. However, the motion for summary judgment of defendant Zion–Benton Board of Education and Don Williamson, as an employee of the Zion–Benton Board of Education, is denied.

IT IS SO ORDERED.

function is essentially the same regardless of the employer: he/she heals patients. However, the nature of a police officer's duty changes when his employer changes.