Betty ASHBY, Decedent, by Betty Ashby Harris, Administratrix of the Estate of Betty Jean Ashby; Carl Ashby, Dequita Ashby, Mattie Ashby, and Shimika Ashby, by their Temporary Custodian, Betty Ashby Harris; and Betty Ashby Harris, Appellants,

v.

CITY OF LOUISVILLE, Kentucky; Louisville Division of Police; Jerry Abramson, in his official capacity as Mayor of the City of Louisville; Richard Dotson, Individually and in his official capacity as Chief of Police; Officer P. Sweitzer, Officer Jesse Foley, Officer Wendell Ennis, Officer Gary Hearn, and Officer M.W. Mitchell, Individually and in their official capacities as Louisville Division of Police Officers; and Tami Lynn Bender, Administratrix of the Estate of Mark Edward Bender, Appellees.

No. 91–CA–1703–MR.

Court of Appeals of Kentucky.

Nov. 20, 1992.

Joseph L. White, Karen M. Timmel, Louisville, for appellants.

William E. McAnulty, Jr., Janet P. Jakubowicz, Louisville, Robert L. Roark, Lexington, for City of Louisville; Louisville Div. of Police; Jerry Abramson, in his official capacity as Mayor of the City of Louisville; Officer P. Sweitzer, Officer Jesse Foley, Officer Wendell Ennis, Officer Gary Hearn, and Officer M.W. Mitchell, Individually and in their official capacities as Louisville Div. of Police Officers; and Tami Lynn Bender, Administratrix of the Estate of Mark Edward Bender.

A. Courtney Guild, Jan M. West, Louisville, for Richard Dotson, Individually and in his official capacity as Chief of Police.

Before EMBERTON, GUDGEL and WILHOIT, JJ.

GUDGEL, Judge:

This is an appeal from orders entered by the Jefferson Circuit Court in an action stemming from a tragic domestic violence incident which resulted in the death of appellants' decedent, Betty Ashby (hereinafter Ashby). The circuit court granted a summary judgment in favor of Richard Dotson, the former Louisville Police Chief, and dismissed the claims asserted against the remaining appellees. Appellants contend that the trial court erred by concluding that appellees are immune from tort liability with respect to the incidents which led to the filing of this action. They also contend that the trial court erred by finding that appellees are not liable to them (1) for negligently failing to utilize due care in protecting Ashby as required by a "special relationship" which allegedly existed between Ashby and appellees, (2) pursuant to 42 U.S.C. § 1983, for allegedly denying Ashby her due process rights, and (3) pursuant to 42 U.S.C. § 1983, for allegedly denying Ashby her right to equal protection of the law. We agree with appellants' contention as to immunity from tort liability, but otherwise disagree with their contentions. Hence, we affirm in part, and reverse and remand in part.

Ashby and one Carl Branch engaged in a lengthy personal relationship, including an extended period of cohabitation, which produced four children. The relationship deteriorated, however, and on December 12, 1988, Ashby filed a domestic violence petition and succeeded in obtaining an emergency protective order (EPO). This order directed Branch to vacate the parties' residence, to refrain from committing further acts of violence against Ashby, and to refrain from disposing of or damaging the parties' property. At a January 6, 1989, hearing on Ashby's petition, Branch admitted committing acts of abuse. He was ordered to refrain from either committing further acts of violence and abuse, or disposing of or damaging any property of the parties. However, Branch was not ordered to vacate the parties' residence because, according to the court record, Ashby did not want such an order to be entered.

Branch evidently physically abused Ashby on at least one more occasion prior to the date of her death. On January 31,

Ashby filed an affidavit to this effect and on February 1, the district court entered a "forthwith order of arrest" based upon "probable cause to believe that respondent has violated the terms or conditions of an Order or Judgment of this court." The order of arrest directed that Branch should be arrested and confined pending a hearing on February 3. However, Branch was not arrested prior to Ashby's death on February 10.

Although the parties dispute many of the circumstances leading to Ashby's death, it is undisputed that on February 9 Ashby's apartment door was kicked in by Branch or some other unknown person. It also is undisputed that after speaking with the investigating police officers Ashby left her apartment and went to her sister's nearby apartment, but that she returned to her own apartment before morning. Tragically, Branch forced his way into Ashby's apartment the next morning and chased her out of a window and into a neighbor's apartment, where he brutally murdered her by beating her with a crowbar. Branch was subsequently convicted of Ashby's murder.

This civil action for damages was filed by Ashby's mother, who is the executrix of Ashby's estate and the custodian for her four children. In short, it was alleged that one or more of the appellee city's police officers failed to arrest Branch pursuant to an alleged mandatory arrest warrant despite several opportunities to do so. Moreover, appellants alleged that these police officers failed to know about the existing EPO order, failed to respond appropriately to the acts of domestic violence committed against Ashby including those which occurred on the morning of her death, and negligently failed to provide Ashby with necessary and appropriate assistance. Predictably, appellees claimed in response that Branch could not be located by the police officers for purposes of making an arrest, that the officers responded appropriately to the domestic violence situation including the violence which occurred on the morning of Ashby's death, and that after Ashby's door was kicked in the night before her death the police officers offered appropriate assistance to her, including a suggestion that she go to the local spouse abuse center. According to appellees, Ashby declined to accept such assistance or to follow their advice.

Appellee Dotson, Louisville's former police chief, made a motion for a summary judgment. The remaining appellees made a joint motion either to dismiss the action for failure to state a claim upon which relief could be granted, or for a summary judgment. The trial court granted a summary judgment in favor of Dotson, and dismissed with prejudice the claims against the remaining appellees. This appeal followed.

■ Appellants argue first that the trial court erred by concluding that appellee City of Louisville, and the individual appellees who are its agents and officers, are as a matter of law immune from liability in tort concerning the incident which precipitated the filing of this action. We agree.

Municipal corporations are immune from tort liability only in very limited circumstances. As stated in *Gas Service Co., Inc. v. City of London,* Ky., 687 S.W.2d 144, 148 (1985):

> The duty to exercise ordinary care commensurate with the circumstances is a standard of conduct that does not turn on and off depending on who is negligent. With a municipal corporation as with all other legal entities, the question is not whether such a duty exists, but whether it has been violated and what are the consequences. Constitutionally, statutorily, or by court decisions, on occasion we excuse the nonperformance of this duty, but no purpose is served by denying its existence. (Footnote omitted.)

More specifically, Kentucky's highest court repeatedly has held that municipal immunity from liability for "ordinary torts" exists only in situations involving "the exercise of legislative or judicial or quasi-legislative or quasi-judicial functions." *Haney v. City of Lexington,* Ky., 386 S.W.2d 738, 742 (1964). *See also Bolden v. City of Covington,* Ky., 803 S.W.2d 577 (1991); *Gas Service Co.,*

*supra.* This judicially-recognized exception to the rule of municipal tort liability was recently codified in KRS 65.2003. This statute, enacted in 1988, states in pertinent part as follows:

Notwithstanding KRS 65.2001, a local government shall not be liable for injuries or losses resulting from:

. . . .

(3) Any claim arising from the exercise of judicial, quasi-judicial, legislative or quasi-legislative authority *or others,* exercise of judgment or discretion vested in the local government, which shall include by example, but not be limited to:

(a) The adoption or failure to adopt any ordinance, resolution, order, regulation, or rule;

(b) The failure to enforce any law;

(c) The issuance, denial, suspension, revocation of, or failure or refusal to issue, deny, suspend or revoke any permit, license, certificate, approval, order or similar authorization;

(d) The exercise of discretion when in the face of competing demands, the local government determines whether and how to utilize or apply existing resources; or

(e) Failure to make an inspection.

Nothing contained in this subsection shall be construed to exempt a local government from liability for negligence arising out of acts or omissions of its employees in carrying out their ministerial duties. (Emphasis added.)

*See, e.g.,* Robert R. Sparks, Comment, *A Survey of Kentucky Tort Reform,* 17 N.Ky.L.Rev. 473, 483 (1990).

Here, appellees assert that all of the tortious conduct alleged by appellants falls within the quoted statutory exception to municipal tort liability. Specifically, they interpret KRS 65.2003(3) as pertaining not only to the exercise of judicial, quasi-judicial, legislative or quasi-legislative authority, but also to any *other* "exercise of judgment *or* discretion vested in the local government," including any "failure to enforce any law." We disagree with their argument.

Quite frankly, we are unable to determine the legislative intent embodied in the portion of KRS 65.2003(3) which refers to "the exercise of judicial, quasi-judicial, legislative or quasi-legislative authority *or others,* exercise of judgment or discretion vested in the local government" (emphasis added). In this context, the term "others," followed by a comma, is ambiguous as it does not logically modify the phrases which immediately either precede or follow it in the statute. In the face of such ambiguity, we must construe the statute in view of the circumstances as a whole. *See City of Owensboro v. Noffsinger,* Ky., 280 S.W.2d 517 (1955).

As noted above, KRS 65.2003(3) includes several examples of the types of claims against which cities are immune from liability. Each one of those examples pertains to the use of judgment or discretion in the exercise of judicial, quasi-judicial, legislative or quasi-legislative authority and not, as appellees assert, to some "other" exercise of judgment or discretion by the local government. Indeed, the interpretation of the statute urged by appellees would be inconsistent with KRS 65.2001, which was enacted simultaneously with KRS 65.2003 and which provides that "[n]o provision of KRS 65.2002 to 65.2006 shall in any way be construed to expand the existing common law concerning municipal tort liability as of July 15, 1988." *See also* Robert R. Sparks, Comment, *A Survey of Kentucky Tort Reform,* 17 N.Ky.L.Rev. 473 (1990). Moreover, an interpretation of KRS 65.2003 which had the effect of expanding a municipality's immunity from tort liability to include situations outside of the exercise of judicial, quasi-judicial, legislative or quasi-legislative functions certainly would be invalid when tested in light of both recent and longstanding authorities. *See Bolden, supra; Gas Service Co., supra; Haney, supra. See also Restatement (Second) of Torts* § 895C (1979).

Thus, as we view it, the precise issue before this court on appeal is whether the appellee officers and employees, and appellee city by virtue of the doctrine of respondeat superior and KRS 65.2005, may be adjudged liable to appellants because the

negligence claims do not fall within the recognized exceptions to the general rule of municipal liability. *See City of Lexington v. Yank,* Ky., 431 S.W.2d 892 (1968). Although the terms "quasi-judicial" and "quasi-legislative" have never been statutorily defined, the supreme court held in *Gas Service Co., supra* at 149, that quasi-judicial and quasi-legislative functions involve regulatory types of activities as to which "the government was not charged with having caused the injury, but only with having failed to prevent it by proper exercise of regulatory functions which have elements appearing quasi-judicial and quasi-legislative in nature." In line with that holding, the supreme court recently attempted in *Bolden, supra* at 581, to further define "the area of activity" covered by these frequently cited terms of art, as follows:

We can find no better definitions than those in Black's Law Dictionary, Sixth Edition (1990), p. 1245:

"Quasi–Judicial—A term applied to the action, discretion, etc. of public administrative officers or bodies, who are required to investigate facts, or ascertain the existence of facts, hold hearings, weigh evidence, and draw conclusions from them, as a basis for their official action, and exercise discretion of a judicial nature."

"Quasi–Judicial Power—The power of an administrative agency to adjudicate the rights of persons before it."

"Quasi–Legislative Power—The power of an administrative agency to engage in rule-making."

Based upon these definitions, the court found in *Bolden* that the city of Covington was immune from municipal liability for any claims arising out of its exercise of judgment or discretion in connection with municipal housing inspections, because such an exercise of judgment or discretion is quasi-judicial in nature. *See also Restatement (Second) of Torts* § 895C (1979).

Here, however, we are not persuaded by appellees' contention that their alleged actions also fall within the recognized exceptions to municipal liability set out in KRS 65.2003. Although police officers certainly investigate facts, their duties do not include regulatory functions such as those involved in *Bolden, supra,* including the holding of hearings, the weighing of evidence, or the exercise of judicial discretion and adjudication of parties' rights.

Moreover, we do not agree with appellees' assertion that a finding in their favor is compelled by the fact that KRS 65.2003 lists the "failure to enforce any law" as an example of the type of claim against which a local government would be immune from liability. That example clearly applies only to situations which arise out of "the exercise of judicial, quasi-judicial, legislative or quasi-legislative authority," and not to those which arise out of the exercise of other types of authority. *See* KRS 65.-2003(3). We therefore conclude that the acts complained of do not fall within the protection of the statutory exception to municipal liability set forth in KRS 65.2003(3), and that the trial court erred by finding in favor of the city on this ground.

■ Further, we are not persuaded by appellees' argument that the individual appellees are also immune from personal liability. *See Gould v. O'Bannon,* Ky., 770 S.W.2d 220 (1989); *Happy v. Erwin,* Ky., 330 S.W.2d 412 (1959). In Kentucky, personal liability for a public officer's or public employee's negligent performance of duties depends in part on whether the powers or duties in question were ministerial or discretionary in nature. *Thompson v. Huecker,* Ky.App., 559 S.W.2d 488 (1977). The general rule of thumb in Kentucky, as stated in *Thompson, id.* at 495, is that a public officer or employee "may be personally liable for negligence or bad faith in performing *ministerial* duties" (emphasis in original), but is not subject to tort liability in certain circumstances for actions taken in the performance of discretionary duties. *See also Gould, supra.* In *Thompson, supra* at 496, this court adopted the approach taken in the *Restatement (Second) of Torts* § 895D(3) (Tentative Draft No. 19, 1973), and concluded that

the court must not only consider whether the particular activity should be charac-

terized as a discretionary function, but the court must also determine the degree of immunity or privilege afforded the officer. If the officer is entitled to absolute immunity, he is not liable so long as he acts within the general scope of his authority. If the officer is entitled to only a limited or qualified immunity, the officer is not liable if he acts in good faith. Under other circumstances, the public officer is privileged so long as his actions are reasonable under the circumstances. *See* Comment e to § 895D.

■ Here, appellants' initial and amended complaints made numerous and varied claims for relief based upon the individual appellees' alleged negligence in failing to perform certain ministerial and discretionary duties, including several duties which are mandated by the Domestic Violence and Abuse statute, KRS 403.715 *et seq.* Appellants alleged in part that appellees failed to establish and to maintain records pertaining to the issuance and current status of domestic violence court orders, failed to promptly report to the Cabinet for Human Resources all incidents of actual or suspected domestic violence or abuse, failed to adequately train and supervise law enforcement officers regarding domestic violence and abuse, failed to provide adequate assistance to the decedent, and failed to make a timely and mandatory arrest of Carl Branch for the violation of an emergency protective order.

Certainly, at least some of these allegations, including those regarding mandatory reporting or record keeping, or regarding any mandatory arrest requirements, involved negligence in the performance of ministerial rather than discretionary functions. *See Shearer v. Hall,* Ky., 399 S.W.2d 701 (1965); *Upchurch v. Clinton County,* Ky., 330 S.W.2d 428 (1959). If the individual appellees were negligent in the performance of any such ministerial duties owed to Ashby, they may be adjudged personally liable in tort for any resulting harm. This is so regardless of the fact that the cost of the defense of this action and the liability for actual payment of any judgment or settlement rendered against any individual employee may rest with the

city of Louisville. *See* KRS 65.2005 and 65.2003.

Given our conclusions as to the viability of these allegations and claims for relief, we must conclude that the trial court erred by finding that appellants failed to state a claim upon which relief could be granted. *See* CR 8.01. However, with respect to appellees Abramson and Dotson, we perceive no basis either in the pleadings or in the record which legally would be sufficient to support an action for negligence against either of them. Therefore, we affirm the court's dismissal of the claim against Abramson, and affirm its summary judgment as to the claim against Dotson.

Next, appellants argue that the trial court erred by finding that appellees are not liable to them for negligently failing to exercise due care in protecting Ashby as required by a "special relationship" which allegedly existed between Ashby and appellees. We disagree.

■ Appellants' "special relationship" claim is based in part on appellees' alleged negligence in failing to meet a duty which they allegedly assumed to utilize due care in providing adequate police protection to Ashby, thereby either increasing the risk of harm to Ashby or causing Ashby to suffer harm because of her reliance on appellees to provide such services. However, the general rule of thumb, in the absence of some "special relationship," is that a municipality or a law enforcement agency or official does not owe individual citizens a duty to protect them from crime. Thus, courts generally will not consider the "reasonableness" of actions taken to protect individual citizens from crime. *See, e.g., Balistreri v. Pacifica Police Dept.,* 901 F.2d 696 (9th Cir.1990); *Sorichetti v. City of New York,* 65 N.Y.2d 461, 492 N.Y.S.2d 591, 595, 482 N.E.2d 70, 74 (1985); *Santy v. Bresee,* 129 Ill.App.3d 658, 84 Ill.Dec. 853, 473 N.E.2d 69 (1984). This limitation both reflects the judgment that the duty to protect is owed to the public as a whole rather than to a particular individual or class of citizens, and recognizes the existence of questions of resource allocation. *See, e.g.,*

*Raucci v. Rotterdam,* 902 F.2d 1050 (2d Cir.1990); *Siddle v. City of Cambridge,* 761 F.Supp. 503 (S.D.Ohio 1991); *Santy, supra.*

■ Appellants urge this court to follow the lead of the state of New York, however, by holding that under state law a "special relationship" existed between Ashby and appellees, and thereby created an affirmative duty requiring appellees to act on Ashby's behalf. *See, e.g., Raucci, supra; Sorichetti, supra; De Long v. County of Erie,* 60 N.Y.2d 296, 469 N.Y.S.2d 611, 457 N.E.2d 717 (1983). However, numerous jurisdictions which recently have considered the issue of "special relationships" have acknowledged that since *DeShaney v. Winnebago County Department of Social Services,* 489 U.S. 189, 109 S.Ct. 998, 103 L.Ed.2d 249 (1989), no "special relationship" will be found to exist for purposes of due process protections unless it is shown, in a given situation, that the victim was in state custody or was otherwise restrained by the state at the time in question, and that the violence or other offensive conduct was perpetrated by a state actor. *See, e.g., Dawson v. Milwaukee Housing Authority,* 930 F.2d 1283 (7th Cir.1991); *Brown v. Grabowski,* 922 F.2d 1097 (3d Cir.1990), *cert. denied,* —— U.S. ——, 111 S.Ct. 2827, 115 L.Ed.2d 997 (1991); *Balistreri, supra; Philadelphia Police and Fire Association for Handicapped Children, Inc. v. City of Philadelphia,* 874 F.2d 156 (3d Cir.1989); *Hynson v. City of Chester,* 731 F.Supp. 1236 (E.D.Pa.1990).

Here, it is undisputed both that Ashby was not in state custody when the violence was committed against her, and that her assailant was not a state actor. Hence, the tragic events below did not constitute an actionable due process violation under *De-Shaney, supra.* Moreover, despite our abhorrence of the violence suffered by Ashby at the hands of her assailant, we cannot conclude that any basis exists for otherwise finding that a "special relationship" existed between Ashby and appellees so as to have created an affirmative duty of protection. *See, e.g., Santy, supra* (no special relationship was created between murder

victims and the defendant law enforcement agency or officers where the victims had requested protection, the defendants were aware of the murderer's threats against the victims, and the defendants had promised to warn the victims of the murderer's release from custody. These circumstances "do not take the case out of the general rule that law enforcement agencies and officers do not owe individual citizens a duty to protect them from crime." *Id.* 129 Ill.App.3d at 72, 84 Ill.Dec. 853, 473 N.E.2d 69). Hence, it follows that the trial court did not err by failing to find that a "special relationship" existed between Ashby and appellees.

■ Next, appellants contend that the trial court erred by finding that appellees did not deny Ashby her constitutional right to due process of law. We disagree.

Contrary to appellants' assertion, it is clear that appellees had no constitutional duty to protect Ashby against the violence of a private person and that any failure to do so did not amount to a violation of her substantive due process rights. *See De-Shaney, supra.* Hence, we affirm the court's dismissal of this claim.

■ Finally, appellants contend that the trial court erred by finding that appellees did not deny Ashby her constitutional right to equal protection of the law. Again, we disagree.

Federal courts have recognized claims for denial of equal protection in situations such as this in very limited circumstances. As noted in *Hynson v. City of Cheshire Legal Dept.,* 864 F.2d 1026, 1031 (3d Cir. 1988):

In order to survive summary judgment, a plaintiff must proffer sufficient evidence that would allow a reasonable jury to infer that it is the policy or custom of the police to provide less protection to victims of domestic violence than to other victims of violence, that discrimination against women was a motivating factor, and that the plaintiff was injured by the policy or custom.

Here, there is no allegation in appellants' several pleadings and no evidence in the record to support a finding that Louisville's

police department has a policy or custom of providing less protection to victims of domestic violence than to victims of other types of violence, or that discrimination against women is a motivating factor behind any such policy. On the contrary, appellants merely alleged that there was a failure to give proper regard to complaints of abuse by women including the decedent. Such an allegation of indifference, without more, may be germane to appellants' negligence claims but it clearly is insufficient to state a claim for relief upon equal protection grounds. *Hynson*, 864 F.2d 1026.

The court's orders are affirmed in part, and reversed and remanded in part for further proceedings consistent with the views expressed in this opinion.

All concur.