RENDERED: SEPTEMBER 25, 2020; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2019-CA-1893-MR

CITY OF HODGENVILLE,
KENTUCKY, AND STEVEN R.
JOHNSON                                                           APPELLANTS


                              APPEAL FROM LARUE CIRCUIT COURT
v.                            HONORABLE JOHN DAVID SEAY, JUDGE
                              ACTION NO. 15-CI-00042


DEE ANN SANDERS                                                      APPELLEE


OPINION
AFFIRMING

** ** ** ** **

BEFORE:  COMBS, DIXON, AND MAZE, JUDGES.

COMBS, JUDGE:  This is a civil rights case in which the City of Hodgenville and

former Hodgenville Chief of Police Steven R. Johnson appeal from an order of the

LaRue Circuit Court denying their joint motion for summary judgment.  After our

review of the record and the applicable law, we affirm.

On March 27, 2015, Dee Ann Sanders[1] filed a lawsuit against the City and its former Chief of Police, Steven Johnson, individually, based upon Chief Johnson's release to the media of a "dashcam" video recording. In her complaint, Sanders claimed a private right of action. She alleged violations of state law and sought relief under the provisions of 42 U.S.C.[2] §1983 for violations of her constitutional rights under color of state law. In April of 2015, the case was removed to federal court.

In an opinion and order signed on March 28, 2018, the federal district court determined that Sanders failed to establish that the City and Chief Johnson had violated her constitutional rights. Consequently, concluding that her federal statutory claim for relief failed as a matter of law, the court dismissed the §1983 claim. The federal district court declined to exercise supplemental jurisdiction over Sanders's remaining state-law claims and remanded them to the LaRue Circuit Court. The LaRue Circuit Court entered an order denying the motion of the City and Chief Johnson for summary judgment. The City and Chief Johnson now appeal that order.

---

[1] The spelling of the appellee's name differs between the notice of appeal and the complaint filed in the record below. For the purposes of this Opinion, we adopt the spelling as it appears in the notice of appeal.

[2] United States Code.

In *Sanders v. City of Hodgenville, Kentucky*, 323 F. Supp. 3d 904, 908-09 (W.D. Ky. 2018), the federal district court recited the following factual background in its decision:

> On March 29, 2014, Sanders's husband Sam Sanders was driving to his residence after watching a basketball game at his father-in-law's house. At the time, Sam Sanders served as the superintendent of the school system of LaRue County, Kentucky, in which Hodgenville is located. Within yards of his residence, Hodgenville Police Officer James Richardson pulled over Sam Sanders on suspicion of driving under the influence. The stop occurred on a public roadway. A second officer arrived at the scene, and after conducting field-sobriety tests, the officers placed Sam Sanders under arrest. At some point, the dashboard camera in Richardson's squad car began recording.
>
> Shortly thereafter, Deeann Sanders arrived at the scene. Sanders wore a white housecoat that rested slightly above knee level, a nightgown underneath, and tennis shoes. The arresting officers later described Sanders as "upset . . . and condescending" during the encounter. The dashboard camera in Richardson's car captured the entire interaction with Deeann Sanders.
>
> Thereafter, Richardson drove Sam Sanders to the police station for booking procedures. Meanwhile, Deeann Sanders went to the home of Terry Cruse, Hodgenville's mayor at the time. Cruse, who was asleep, awoke to the sound of "someone beating on [his] back door." When he opened the door, he found Deeann Sanders, who asked him "to personally go down to tell the police officers to let her husband go." Cruse declined. Sanders then arrived at the police station, asked to speak with her husband, and eventually called the LaRue County District Court Judge to inform him of the evening's events. Richardson activated his body

camera during the incident.  The video shows Deeann Sanders repeatedly knocking on the station's door and interrupting the officers during booking.

The next day, Madonna Hornback, who then served as Hodgenville's City Clerk, allegedly received several media requests for the dashcam recording that captured Sam Sanders's arrest.  She referred the media to Hodgenville Chief of Police Steven Johnson and wrongly informed Johnson that the city must comply with the requests in light of Kentucky's Open-Records Act, Ky. Rev. Stat. § 61.870 *et seq.*  Thereafter, Johnson raised the matter with Mayor Cruse, who told Johnson "to comply with the open records laws just as he would with anyone else and to handle it."  Johnson then invited the media to view the recording and allowed one cameraman to film the video as it played on a television monitor.  Media outlets eventually aired the dashcam video on broadcast television.

In fact, Johnson may have violated state law by releasing the video.  An exception to the Open-Records Act, § 189A.100(2)(e), provides that video recordings of DUI arrests "shall be used for official purposes only."  Any public official or employee who fails to comply with § 189A.100 "shall be guilty of official misconduct in the first degree."  Ky. Rev. Stat. § 189A.100(3).

In light of § 189A.100, Sam and Deeann Sanders reported Johnson's actions to the Kentucky State Police. The Commonwealth eventually charged Johnson with official misconduct in the first and second degree for his release to the media of the dashcam recording.  A LaRue County jury acquitted Johnson of all charges.

(Citations to the record and footnote omitted.)

Upon remand of the case to the LaRue Circuit Court, the City and Chief Johnson joined together to file a summary judgment motion.  They argued

that they were entitled to judgment as a matter of law because Chief Johnson enjoyed qualified official immunity and contended that the City was rendered immune by specific provisions of Kentucky's Claims Against Local Governments Act (CALGA). KRS[3] 65.2001. The LaRue Circuit Court denied the joint motion of the City and Chief Johnson for summary judgment. This interlocutory appeal followed.

The City and Chief Johnson, as its agent, contend that the circuit court erred by failing to conclude that they are immune from liability as a matter of law with respect to the release of the video recording. They argue first that Chief Johnson was entitled to the protection of qualified official immunity.

An order denying a claim of qualified official immunity is subject to immediate appeal even in the absence of a final judgment. *Breathitt County Board of Education v. Prater*, 292 S.W.3d 883, 888 (Ky. 2009). Whether a defendant is protected by qualified official immunity is a question of law. *Rowan County v. Sloas*, 201 S.W.3d 469, 475 (Ky. 2006). Consequently, our review is *de novo. Id.* Our review is strictly limited to the *sole* issue of whether immunity was properly denied. *Baker v. Fields*, 543 S.W.3d 575, 577-78 (Ky. 2018).

Under our common law, "when sued in their individual capacities, public officers and employees enjoy only qualified official immunity, which

---

[3] Kentucky Revised Statutes.

affords protection from damages liability for good faith judgment calls made in a legally uncertain environment." *Yanero v. Davis*, 65 S.W.3d 510, 522 (Ky. 2001). *Yanero* distinguishes between acts that are discretionary rather than merely ministerial in determining whether immunity applies:

> Qualified official immunity applies to the negligent performance by a public officer or employee of (1) discretionary acts or functions, *i.e.*, those involving the exercise of discretion and judgment, or personal deliberation, decisions, and judgment; (2) in good faith; and (3) within the scope of the employee's authority.

*Id.* (citations omitted).

Discretionary acts "are those involving quasi-judicial or policy-making decisions." *Marson v. Thomason*, 438 S.W.3d 292, 297 (Ky. 2014). "An act is not necessarily 'discretionary' just because the officer performing it has some discretion with respect to the means or method to be employed." *Yanero*, 65 S.W.3d at 522 (citing *Franklin County. v. Malone*, 957 S.W.2d 195, 201 (Ky. 1997)). It is said that "[o]fficials are not liable for bad guesses in gray areas" and that "[m]ost government officials are not expected to engage in 'the kind of legal scholarship normally associated with law professors and academicians.'" *Sloas*, 201 S.W.3d at 475 (citing *Maciariello v. Sumner*, 973 F.2d 295, 298 (4th Cir. 1992), *cert. denied*, 506 U.S. 1080, 113 S.Ct. 1048, 122 L.Ed.2d 356 (1993) and 1A Martin A. Schwartz, *Section 1983 Litigation: Claims and Defenses* § 9A.09[B] (4th ed. 2006)).

Alternatively, where a public officer or employee negligently performs a *ministerial* act, he **is not entitled to** the protection of qualified official immunity. *Id.* An act is characterized as ministerial when it "requires only obedience to the orders of others, or when the officer's duty is absolute, certain, and imperative, involving merely execution of a specific act arising from fixed and designated facts." *Id*. at 478 (citation omitted). A ministerial act or function:

> is one that the government employee must do "without regard to his or her own judgment or opinion concerning the propriety of the act to be performed." 63C Am.Jur.2d *Public Officers and Employees* § 318 (updated through Feb. 2014). In other words, if the employee has no choice but to do the act, it is ministerial.

*Marson*, 438 S.W.3d at 297.

In the case before us, the Larue Circuit Court concluded that Chief Johnson was not entitled to the protections of qualified official immunity because his release of the dashcam video recording to the media was a ministerial act that was specifically and clearly governed by statute. We agree.

We begin our analysis with an examination of the pertinent statutory provisions applicable at the time in question concerning the use of police dashcam video recordings. Pursuant to the provisions of KRS 189A.100(2), law enforcement authorities are permitted to videotape traffic stops and field sobriety tests. These video recordings are admissible into evidence and may be introduced at trial either by the Commonwealth or by a defendant. KRS 189A.100(2)(c).

However, except for specified official purposes, these recordings are considered "confidential records" **not subject to public disclosure**. KRS 189A.100(2)(e).

Public officials or employees who release recordings other than as authorized are subject to criminal penalties. "Public officials or employees utilizing or showing recordings other than as permitted in this chapter or permitting others to do so shall be guilty of official misconduct in the first degree." KRS 189A.100(2)(g). Provisions of our Open Records Act authorize public agencies to withhold "[p]ublic records or information the disclosure of which is prohibited or restricted or otherwise made confidential by enactment of the General Assembly[.]" KRS 61.878(1)(l).

We agree with the conclusion of the circuit court that the language of KRS 189A.100 expressly prohibits the release of the disputed video and that its unambiguous provisions do not require the exercise of any discretion, judgment, or personal deliberation. By virtue of the statute, public officials and employees are clearly on notice that a dashcam video recording of a traffic stop of one suspected of driving under the influence is a confidential record to be used for official purposes only. The statute clearly and unequivocally establishes that an unauthorized release of a dashcam video recording constitutes a violation of law. Chief Johnson was not making a "bad guess in a gray area." Instead, his duty was "absolute, certain, and imperative." Chief Johnson could not, in good faith, have

failed to abide by the statute's provisions.  Therefore, the circuit court did not err by concluding that he is not protected by qualified official immunity and that the City may be held vicariously liable for his actions.

The City and Johnson also argue that the City is entitled to the statutory immunity provided by CALGA.  KRS 65.2001.  They contend that CALGA was enacted to render cities "immune from liability for certain protected acts of its employees, including discretionary acts and for the failure to enforce any laws."

Municipal corporations are immune from tort liability in very limited instances. *Ashby v. City of Louisville*, 841 S.W.2d 184, 186 (Ky. App. 1992).  But as the City correctly notes, a judicially recognized exception to the rule of municipal tort liability was codified at KRS 65.2003.  The statute provides, in pertinent part, as follows:

> [A] local government shall not be liable for injuries or losses resulting from:
>
> . . .
>
> (3) Any claim arising from the exercise of judicial, quasi-judicial, legislative or quasi-legislative authority or others, *exercise of judgment or discretion* vested in the local government, which shall include by example, but not be limited to:
>
> > (a) The adoption or failure to adopt any ordinance, resolution, order, regulation, or rule;

(b) *The failure to enforce any law*;

(c) The issuance, denial, suspension, revocation of, or failure or refusal to issue, deny, suspend or revoke any permit, license, certificate, approval, order or similar authorization;

(d) The exercise of discretion when in the face of competing demands, the local government determines whether and how to utilize or apply existing resources; or

(e) Failure to make an inspection.

Nothing contained in this subsection shall be construed to exempt a local government from liability for negligence arising out of acts or omissions of its employees in carrying out their ministerial duties.

KRS 65.2003 (emphasis added).

The City and Chief Johnson contend that all of the wrongful conduct alleged by Sanders falls within this statutory exception to municipal tort liability. Primarily, they reassert the argument that Chief Johnson exercised his discretion and made a "judgment call" when he released the dashcam video recording to the media. We cannot agree. Chief Johnson was clearly acting in a ministerial capacity rather than exercising judgment or discretion.

Alternatively, the City and Chief Johnson contend that the provisions of KRS 65.2003(3)(b) render them immune from liability for losses occasioned by their "failure to enforce any law[.]" However, this provision merely codified the

judicially recognized exception to the rule of municipal tort liability based upon discretionary acts. Their argument is premised on the erroneous presumption that Chief Johnson exercised his judgment or discretion when he released the dashcam footage. The act of releasing the video footage cannot be characterized as a discretionary decision to fail or to refuse to enforce any law. Instead, his very act constitutes a **violation** of law. Because **none** of Sanders's claims falls within the recognized exceptions to the general rule of municipal liability, the circuit court did not err by denying the motion for summary judgment.

We AFFIRM the order of the LaRue Circuit Court.


ALL CONCUR.

BRIEFS FOR APPELLANTS:

Jason Bell
Elizabethtown, Kentucky

BRIEF FOR APPELLEE:

Jason P. Floyd
Bardstown, Kentucky