RENDERED: JANUARY 20, 2023; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2021-CA-0181-MR

JENNIFER ALBRIGHT,
INDIVIDUALLY AND AS
ADMINISTRATRIX OF THE ESTATE
OF DAVID K. ALBRIGHT                                            APPELLANT


                        APPEAL FROM JEFFERSON CIRCUIT COURT
v.                      HONORABLE ANN BAILEY SMITH, JUDGE
                        ACTION NO. 18-CI-007082


LOUISVILLE & JEFFERSON
COUNTY METROPOLITAN SEWER
DISTRICT                                                        APPELLEE


OPINION
REVERSING AND REMANDING

** ** ** ** **

BEFORE: CETRULO, LAMBERT, AND TAYLOR, JUDGES.

TAYLOR, JUDGE: Jennifer Albright, individually and as administratrix of the

estate of David K. Albright, (collectively referred to as Albright) brings this appeal

from a November 17, 2020, opinion and order of the Jefferson Circuit Court

rendering summary judgment and dismissing Albright's tort claims against

Louisville & Jefferson County Metropolitan Sewer District (MSD).[1]  We reverse and remand.

## Background

The tragic events underlying this appeal occurred on August 31, 2018, when David Albright, a minor and son of Jennifer Albright, drowned after water from a rainstorm swept him into a drainage pipe operated and maintained by MSD. The drainage pipe was twenty-one inches in diameter, was not equipped with a grate over its entrance, and was located approximately eighty feet from the Albright's home.  Also, a shallow drainage ditch ran through the backyard of the Albright's home and other homes in the subdivision directly to the drainage pipe, which then descended underground for approximately 430 feet, eventually exiting into a catch basin.

On the day in question, David and his brother were playing in water that had collected from a heavy rain in the drainage ditch located directly behind their home.  Their mother, Jennifer, was watching and videotaping the pair.  At some point, David and his brother moved down the drainage ditch and were playing in water closer to the drainage pipe.  It appears that David was suddenly swept feet first into the drainage pipe; at this time, Jennifer grabbed David's arm

---

[1] Jennifer Albright's Kentucky Rules of Civil Procedure 59.05 Motion to Alter, Amend or Vacate the opinion and order granting summary judgment was denied by order entered January 29, 2021.

but was unable to hold him against the extreme force of the water entering the drainage pipe. David was later found by first responders in the catch basin. David ultimately died as a result of his injuries on September 7, 2018.

On December 7, 2018, Albright filed a complaint against MSD. Relevant herein, Albright raised the following claims:

## COUNT I – NEGLIGENCE

10. That the Defendant, Metropolitan Sewer District, owned, developed, constructed, maintained and/or modified the storm drainage system.

11. That the storm drainage system was negligently designed, maintained and constructed by Defendant Metropolitan Sewer District and constituted an unreasonably dangerous condition.

12. That the Defendant, Metropolitan Sewer District, its agents, employees, contractors, representatives or its officers knew or should have known of the existence of the unsafe, defective or dangerous condition created by the storm drainage system because the action or inactions of the Defendant, Metropolitan Sewer District, through its agents, employees, contractors, representatives, or officers, caused the unsafe, defective or dangerous condition.

13. That Requests had been made upon Defendant, Metropolitan Sewer District, over past years to place grates or bars over the storm drain pipes in the storm drainage system located in the Old Dorsey Place subdivision which the Defendant, Metropolitan Sewer District, refused. Had grates or bars been placed on the drain pipes as requested or other appropriate remedial action been taken by Defendant, Metropolitan Sewer District, this tragic incident would not have occurred.

-3-

14. That as a direct and proximate result of Defendant's negligence, Davey Albright was violently pulled into the storm drain pipe causing his serious injuries and death.

## COUNT II – NEGLIGENCE/FAILURE TO WARN

15. That the Defendant, Metropolitan Sewer District, had a duty to warn members of the public, including, the Plaintiff and her decedent, Davey Albright, of the unreasonably dangerous condition of the storm drainage system.

16. That the Defendant, Metropolitan Sewer District, knew or should have known about the dangerous and hazardous condition created by the defective design, maintenance and construction of the storm drainage system and negligently failed to provide adequate warnings of the hazards and dangers known to them, to the public, including Plaintiff and her decedent, Davey Albright[.]

17. That as a direct and proximate result of Defendant's negligent and reckless failure to warn of the dangers presented by the storm drainage system, Davey Albright was violently pulled into the storm sewer drain pipe causing serious injuries and death.

. . . .

## COUNT IV – ATTRACTIVE NUISANCE

20. That because of the hidden and latent dangers and hazards created by the storm sewer system, it constituted an "attractive nuisance" which Defendant Metropolitan Sewer District negligently created and failed to correct or give warning of to the public, including, Plaintiff and her decedent, Davey Albright.

21. That the Defendant, Metropolitan Sewer District, knew or should have known that children living in the Old Dorsey Place subdivision, including Plaintiff's decedent, Davey Albright, could and likely would come into close proximity to the storm drainage system including 24" drain pipes, while playing in their backyards and the backyards of their neighbors and that the danger associated with the storm drainage system would not be recognized or appreciated by those children.

22. That as a direct and proximate result of this "attractive nuisance" Davey Albright unknowingly encountered the hidden and latent danger and hazard associated with the storm drainage system when he came in proximity to the storm sewer drain pipe in question and was violently pulled into same, causing his serious injuries and death.

Complaint at 3-5. Albright sought both compensatory and punitive damages.

MSD filed an answer and claimed entitlement to immunity under the Claims Against Local Government Act (CALGA) and particularly Kentucky Revised Statutes (KRS) 65.2003. Eventually, MSD filed a motion for summary judgment. In pertinent part, MSD argued that it was immune from tort liability under KRS 65.2003. Particularly, MSD maintained:

There is no dispute that "MSD is a local government under the definition of CALGA." Accordingly, pursuant to CALGA, MSD is not liable for injuries or losses resulting from: (1) the exercise of its discretion when, in the face of competing demands, MSD determines whether and how to utilize or apply existing resources; (2) MSD's adoption or failure to adopt any ordinance, resolution, order, regulation, or rule; or (3) MSD's failure to perform an inspection.

. . . .

MSD has also described, in the Drainage Manual, its decision in the face of competing risks and resources, not to install grates on existing drainage systems. . . . In applying its principles and utilizing its resources, MSD concluded in the Drainage Manual that "MSD will not place grates on existing drainage systems. . . [.]"

Here, Plaintiff's claims are simply an objection to these discretionary decisions by MSD. The crux of Plaintiff's claims is that MSD is liable for David's death because MSD was negligent in not placing a grate over the storm sewer pipe at issue, which had been in place since approximately 1984. However, as described above, there is no requirement for MSD to do so. In support of her position, Plaintiff cites a statement from the American Society of Engineers ("ASCE") recommending a "case by case" evaluation of whether to install grates over pipes. . . . However, a mere evaluation of whether or not to utilize a grate is a far cry from a mandate for MSD to install grates in general, and it is certainly not a legal mandate that requires a grate over the pipe at issue. Indeed, the statement from ASCE is discretionary on its face as it permits one to decide not to install a grate after an evaluation. Accordingly, it is undisputed that MSD is not required to install grates over storm sewer pipes in general, and there is no requirement, statutory or otherwise, mandating that MSD place a grate over the piping system at issue in this case.

Due to the lack of a mandate, MSD exercised its discretion in adopting the policies and practices set forth in the Design Manual, the Drainage Manual, and the Plan. . . .

MSD's decision not to implement a program to install grates over pipes does not solely involve the weighing and prioritization of resources; it also involves

MSD's weighing of public safety risks. MSD determined that grates create a substantial risk to personal safety and property damage because they become clogged and exacerbate flooding. . . .

. . . .

Therefore, MSD concluded "that if you put a grate in front of a headwall in Jefferson County, you're increasing the risk of blockages and you're increasing the risk of flooding at those locations." And MSD evaluated these risks. As stated, MSD has *thousands* of piping structures throughout Jefferson County. MSD evaluated its system and it concluded that the flooding risks caused by grates is substantial enough that grates should not be used in MDS's system. . . .

Case law establishes that in the absence of a mandate to install grates over pipes, MSD's decision not to install grates, in the face of other competing demands and MSD's evaluation of the public safety risks, is a discretionary one and MSD is immune from liability under CALGA. . . .

. . . .

[I]t is undisputed that MSD is not required by any statute, regulation or other requirement to place grates over *any* storm sewer pipe in its system, nor is there a requirement for MSD to place a grate over the specific storm sewer pipe at issue. Furthermore, the storm sewer pipe at issue in this case is not an outlier in MSD's system–there are *thousands* of storm pipes in MSD's storm sewer system. MSD has weighed its choices and concluded that grates will lead to flooding in its system. Therefore, if MSD were to install grates in its system, then there are potentially thousands of new locations that may be subject to flooding, resulting in more risks to public safety. In the absence of a mandate, MSD's evaluation of the competing risks associated with grates and the

-7-

other substantial issues with MSD's system, the prioritization of those risks, and MSD's decision on how to allocate its limited resources to address these issues, is a discretionary act involving official judgment and policy choices that are protected by CALGA.

The record is also undisputed that MSD, through its Design Manual, exercised its discretion on the applicable design criteria and does not require grates. Furthermore, the Drainage Manual documents MSD's development of its practice, in the face of other competing demands posed by the system it inherited, not to install grates. . . .

. . . .

[T]his type of determination by MSD to utilize its resources to manage competing risks posed by storm water is precisely the type of discretionary decision that is protected by CALGA. As a result, MSD is entitled to summary judgment because it is immune from liability under CALGA.

Memorandum in Support of MDS's Motion for Summary Judgment at 15-20, 22, 23 (citations omitted) (Record, 591-596, 598-599).

In response, Albright argued that MSD was not entitled to immunity under CALGA. Initially, Albright maintained that MSD was not a local government within the meaning of KRS 65.200(3) and, thus, was not immune under CALGA. However, if MSD qualified as a local government, Albright claimed that its policy or decision as to the installation of safety grates on drainage pipes did not constitute a legislative, judicial, quasi-legislative, or quasi-judicial

function per KRS 65.2003(3).  As a result, Albright believed that MSD was not entitled to immunity.

By opinion and order entered November 17, 2020, the circuit court concluded that MSD was a special district and qualified as a local government per KRS 65.200(3).  The court also determined that MSD was immune from Albright's tort claims:

> The cases of *Mason v. City of Mt. Sterling*, 122 S.W.3d [500 (Ky. 2003)] and *City of Frankfort v. Byrns*, 817 S.W.2d 462 [(Ky. App. 1991)], do not convince the Court that MSD breached a ministerial duty by failing to repair or maintain the pipe.  As noted, these cases involved instances where the utilities failed to design or maintain the drainage systems so negligently that they did not function as intended and, as a result, caused compensable harm.  In the instant case, the drainage pipe in which David Albright drowned was, apparently, fully functional, so functional that the force of the water flowing through it caused David Albright to be swept away.  David did not drown, then, because MSD failed to repair or maintain the grate.  Rather, according to Dr. [Andrew] Earles and Ms. Albright's allegations, MSD failed to prevent the drowning by putting a rule in place that mandated that grates would not be installed over existing drainage pipe entrances.  *See Byrns* at 149.  Also, like the government inspectors who failed to uncover wrongdoing in *Com., Dept. of Banking & Securities v. Brown, supra*, 605 S.W.2d 497 (Ky. 1980) and *Grogan v. Commonwealth, supra*, 577 S.W.2d 4 [(Ky. 1979)], both analyzed in *Byrn[s]*, MSD cannot be held liable for failing to inspect and recognize what Ms. Albright characterizes as a safety issue.  *Byrns* at 149.  Along these same lines, CALGA also shields local governments from liability for "failing to make an inspection."  KRS 65.2003(3)(e).

-9-

It is undisputed that the then City of Louisville and Jefferson County and, later, upon merger of City and County governments, the Louisville Metro Council, by ordinances, delegated to MSD the authority to determine "the manner in which storm sewers, ditches, channels, and other storm water facilities are to be designed, installed, adjusted, altered, or otherwise changed," Metro Ordinance 50.73(A), and delegated MSD the authority to prescribe the manner in which the drainage systems are operated. *Id.* at (C). MSD exercised this authority in its Design and Drainage manuals and it is also undisputed that these manuals comply with state and federal law. It is evident from the many references to these and other documents MSD has cited in its brief, and from the testimony of Dave Johnson, MDS's Development and Storm Water Services Director, that MSD considered the impact installing grates would have on its storm water drainage systems, on its budget, and on public safety. MSD could have decided to place grates over existing pipes or could have decided not to do so, and either decision would have been lawful under existing statutes and regulations. *See* [*Gaither v. Justice and Public Safety Cabinet*, 447 S.W.3d 628, 633-34(Ky. 2014)]. The decision MSD made to not install grates over existing drainage pipes therefore fell within its discretionary rulemaking authority under the common law. *Id.*; and CALGA at KRS 65.2003(3). MSD, then, is free from liability for adopting or failing to adopt a rule under KRS 65.2003(3)(a), is free from liability for deciding how to utilize or apply existing resources under subsection (3)(d), and free from liability for failing to make an inspection under subsection (3)(e).

Opinion and order at 17-18. Upon finding immunity for MSD, the circuit court rendered summary judgment dismissing Albright's tort claims. This appeal follows.

Albright contends that the circuit court erred by rendering summary judgment dismissing the tort claims against MSD under CALGA. Albright asserts that the circuit court erroneously concluded that MSD is an immune entity under CALGA. Albright also infers that MSD is not a local government agency and, thus, does not constitute a "local government" within the meaning of CALGA (KRS 65.200(3)). Regardless, Albright's primary argument in this appeal is that MSD is not immune from tort liability under the facts of this case and summary judgment was improperly granted.

## Standard of Review

Our standard of review upon appeal of an order granting summary judgment is "whether the trial court correctly found that there were no genuine issues as to any material fact and that the moving party was entitled to judgment as a matter of law." *Scifres v. Kraft*, 916 S.W.2d 779, 781 (Ky. App. 1996) (citing Kentucky Rules of Civil Procedure 56.03). Upon a motion for summary judgment, all facts and inferences in the record are to be viewed in a light most favorable to the nonmoving party and "all doubts are to be resolved in his favor." *Steelvest, Inc. v. Scansteel Service Center, Inc.*, 807 S.W.2d 476, 481 (Ky. 1991). Thus, if there are no factual issues, our review of a summary judgment looks only to questions of law whereupon we review a trial court's decision to grant summary judgment *de novo*. *Brown v. Griffin*, 505 S.W.3d 777, 781 (Ky. App. 2016)

(citation omitted).  *See also Peterson v. Foley*, 559 S.W.3d 346, 348 (Ky. 2018).

Our review proceeds accordingly.

**Analysis**

The relevant provision of CALGA is KRS 65.200(3), which provides:

> 'Local government' means any city incorporated under the law of this Commonwealth, the offices and agencies thereof, any county government or fiscal court, any special district or special taxing district created or controlled by a local government.

Applicable herein, KRS 65.200(3) clearly defines a local government as any special district created or controlled by a local government.  A special district created by a local government pursuant to statutory law has been recognized as a local government under KRS 65.200(3).  *Siding Sales, Inc. v. Warren Cnty. Water Dist. No. 1*, 984 S.W.2d 490, 493 (Ky. App. 1998).  As a special district created by a local government, we agree with the circuit court's conclusion that MSD falls within the definition of "local government" under CALGA.

Albright thus asserts that the circuit court erred by concluding that MSD, as a local government, was immune from her tort claims under CALGA.  In essence, Albright argues that under KRS 65.2003, MSD only enjoys immunity from tort liability for judicial, quasi-judicial, legislative, or quasi-legislative functions.  Albright maintains that MSD's failure to place a safety grate over the pipe constituted a ministerial function, and as such, MSD is afforded no immunity

-12-

from tort liability under CALGA. Albright cites to cases holding that a municipality's duty to maintain and repair a sewer/drainage system constitutes a ministerial function to which no immunity attaches. *Mason v. City of Mt. Sterling*, 122 S.W.3d 500, 504 (Ky. 2003); *City of Maysville v. Brooks*, 140 S.W. 665, 668 (Ky. 1911). For the following reasons, we agree with Albright and are of the opinion that the circuit court erroneously concluded that MSD was immune from Albright's tort claims under CALGA.

CALGA was passed by the General Assembly in 1988, and the disposition of this issue centers upon two provisions of CALGA – KRS 65.2001 and KRS 65.2003. KRS 65.2001 reads:

> (1) Every action in tort against any local government in this Commonwealth for death, personal injury or property damages proximately caused by:
>
> (a) Any defect or hazardous condition in public lands, buildings or other public property, including personalty;
>
> (b) Any act or omission of any employee, while acting within the scope of his employment or duties; or
>
> (c) Any act or omission of a person other than an employee for which the local government is or may be liable shall be subject to the provisions of KRS 65.2002 to 65.2006.
>
> (2) Except as otherwise specifically provided in KRS 65.2002 to 65.2006, all enacted and case-made law, substantive or procedural, concerning actions in tort against local governments shall continue in force. No

provision of KRS 65.2002 to 65.2006 shall in any way be construed to expand the existing common law concerning municipal tort liability as of July 15, 1988, nor eliminate or abrogate the defense of governmental immunity for county governments.

KRS 65.2003 provides:

Notwithstanding KRS 65.2001, a local government shall not be liable for injuries or losses resulting from:

. . . .

(3) Any claim arising from the exercise of judicial, quasi-judicial, legislative or quasi-legislative authority or others, exercise of judgment or discretion vested in the local government, which shall include by example, but not be limited to:

(a) The adoption or failure to adopt any ordinance, resolution, order, regulation, or rule;

(b) The failure to enforce any law;

(c) The issuance, denial, suspension, revocation of, or failure or refusal to issue, deny, suspend or revoke any permit, license, certificate, approval, order or similar authorization;

(d) The exercise of discretion when in the face of competing demands, the local government determines whether and how to utilize or apply existing resources; or

(e) Failure to make an inspection.

Nothing contained in this subsection shall be construed to exempt a local government from liability for negligence arising out of acts or

-14-

> omissions of its employees in carrying out their
> ministerial duties.

CALGA plainly applies to torts against local governments for death or personal injury caused by a defect/hazardous condition of public property per KRS 65.2001(1). And, importantly herein, KRS 65.2001(2) expresses legislative intent that CALGA shall not "be construed to expand the existing common law concerning municipal tort liability." Thereafter, KRS 65.2003(3) states that a local government shall not be liable for "[a]ny claim arising from the exercise of judicial, quasi-judicial, legislative, or quasi-legislative authority or others, exercise of judgment or discretion vested in the local government[.]" KRS 65.2003(3) then lists five examples (subsections (a)-(e)) of immune functions, which include the adoption of rules, exercise of discretion on how to utilize resources when faced with completing demands, and failure to make an inspection.

The proper interpretation and scope of KRS 65.2003(3) was addressed by the Court of Appeals in *Ashby v. City of Louisville*, 841 S.W.2d 184 (Ky. App. 1992). The Court of Appeals initially recognized that the Kentucky Supreme Court "repeatedly . . . held that municipal immunity from liability for 'ordinary torts' exists only in situations involving 'the exercise of legislative or judicial or quasi-legislative or quasi-judicial functions'" at common law. *Id.* at 186 (quoting *Haney v. City of Lexington*, 386 S.W.2d 738, 742 (Ky. 1964). Rejecting the argument that KRS 65.2003(3) expanded upon common-law immunity, the Court

-15-

of Appeals viewed municipal immunity under KRS 65.2003(3) and under the

common-law as identical:

> [T]hey interpret KRS 65.2003(3) as pertaining not only to the exercise of judicial, quasi-judicial, legislative or quasi-legislative authority, but also to any *other* "exercise of judgment or discretion vested in the local government," including any "failure to enforce any law." We disagree with their argument.
>
> Quite frankly, we are unable to determine the legislative intent embodied in the portion of KRS 65.2003(3) which refers to "the exercise of judicial, quasi-judicial, legislative or quasi-legislative authority *or others*, exercise of judgment or discretion vested in the local government" (emphasis added). In this context, the term "others," followed by a comma, is ambiguous as it does not logically modify the phrases which immediately either precede or follow it in the statute. In the face of such ambiguity, we must construe the statute in view of the circumstances as a whole. *See City of Owensboro v. Noffsinger*, Ky., 280 S.W.2d 517 (1955).
>
> As noted above, KRS 65.2003(3) includes several examples of the types of claims against which cities are immune from liability. Each one of those examples pertains to the use of judgment or discretion in the exercise of judicial, quasi-judicial, legislative or quasi-legislative authority and not, as appellees assert, to some "other" exercise of judgment or discretion by the local government. Indeed, the interpretation of the statute urged by appellees would be inconsistent with KRS 65.2001, which was enacted simultaneously with KRS 65.2003 and which provides that "[n]o provision of KRS 65.2002 to 65.2006 shall in any way be construed to expand the existing common law concerning municipal tort liability as of July 15, 1988." . . .
>
> . . . .

-16-

> Moreover, we do not agree with appellees' assertion that a finding in their favor is compelled by the fact that KRS 65.2003 lists the "failure to enforce any law" as an example of the type of claim against which a local government would be immune from liability. That example clearly applies only to situations which arise out of "the exercise of judicial, quasi-judicial, legislative or quasi-legislative authority," and not to those which arise out of the exercise of other types of authority. . . .

*Ashby*, 841 S.W.2d at 187-88. Therefore, under KRS 65.2003(3), a local government is immune from tort liability only as to judicial, quasi-judicial, legislative, and quasi-legislative functions. And, the examples set forth in KRS 65.2003(3)(a)-(e) apply only where they arise from underlying judicial, quasi-judicial, legislative, or quasi-legislative functions. *Ashby*, 841 S.W.2d at 188.

For over 100 years, the Kentucky Supreme Court has held that a municipality possesses a "ministerial duty to non-negligently construct, maintain, and repair the sewer system" at common law. *Mason v. City of Mt. Sterling*, 122 S.W.3d at 505; *see also City of Maysville v. Brooks*, 140 S.W. 665, 668 (Ky. 1911). In so doing, the Kentucky Supreme Court recognized that a municipality's construction, maintenance, and repair of sewer systems are not judicial, quasi-judicial, legislative, or quasi-legislative functions. *Mason*, 122 S.W.3d at 505.

As the immunity provided local governments under KRS 65.2003 (CALGA) is identical to that afforded under common-law, it follows that MSD is, likewise, burdened with a ministerial duty to nonnegligently construct, maintain,

-17-

and repair the sewer/drainage system, to which it enjoys no immunity. MSD has attempted to transform this century-old, nonimmune duty into an immune one by reclassifying same as quasi-legislative.

MSD points to a drainage manual, which was adopted by its Board. Therein, MSD states that it is "focusing its limited resources on resolving the most serious and widespread problems first." And, in the drainage manual, Section 8 provides:

> 8. GRATE INSTALLATON OVER CULVERT PIPES
>
> MSD will not place grates on existing drainage systems,
> or allow their use in newly installed drainage systems
> where the potential for flooding damage of a safety
> hazard exists.

MSD Drainage Manual at II-8. MSD argues that the adoption of Section 8 of the Drainage Manual converts its duty into a quasi-legislative act to which immunity attaches per KRS 65.2003(3). Thus, MSD maintains it is entitled to immunity against Albright's tort claims.

In determining what are quasi-legislative or quasi-judicial functions, we are guided by the Kentucky Supreme Court's decision in *Gas Service Co., Inc. v. City of London*, 687 S.W.2d 144 (Ky. 1985).[2] Therein, the Supreme Court

---

[2] In *Gas Service Co. v. City of London*, 687 S.W.2d. 144 (Ky. 1985), the Supreme Court concluded that the City of London was not immune for its negligent repair of a sewer line.

elucidated the meaning of the terms quasi-legislative function and quasi-judicial

function, within the context of municipal immunity:

> *Haney* [*v. City of Lexington*, 386 S.W.2d 738, 742 (Ky. 1964)] abolished municipal immunity "for ordinary torts." . . .
>
> . . . .
>
> [T]here are two cases decided since *Haney* that do classify as immune under a reasonable interpretation of the qualifying language of *Haney* which exempts quasi-judicial and quasi-legislative activities as well as the official acts of judges and legislative bodies. They are *Com., Dept. of Banking & Securities v. Brown*, Ky., 605 S.W.2d 497 (1980), the alleged malfeasance of government employees charged with inspection and regulation of American Building and Loan Association and of Prudential Building & Loan Association when they defaulted on their obligations to depositors, and *Grogan v. Commonwealth*, Ky., 577 S.W.2d 4 (1979), the Beverly Hills Supper Club fire disaster in the City of Southgate, where city and state employees were charged with negligent failure to enforce laws and regulations establishing safety standards for construction and use of buildings.
>
> The question is what activities are excluded from the liability in tort imposed on municipal corporations in *Haney* by the exception made for "the exercise of . . . quasi-legislative or quasi-judicial functions."? "Quasi," when used as an adjective, is defined in *Webster's Third New International Dictionary* (unabr. ed. 1971), as "having some resemblance (as in function, effect, or status) to a given thing."
>
> Our research has failed to produce cases where this terminology is used in the precise context with which we are presently concerned. But *Grogan v. Commonwealth,*

the Beverly Hills nightclub fire and *Com., Dept. of Banking & Securities v. Brown*, the building and loan association collapse, are cases where the "government takes upon itself a regulatory function," *Brown*, *supra* at 498, which is different from any performed by private persons or in private industry, and where, if it were held liable for failing to perform that function, it would be a new kind of tort liability. We deem the limitation expressed in *Haney* by the terms "quasi-judicial and quasi-legislative functions" as directed at the type of regulatory activity represented by *Com., Dept. of Banking & Securities v. Brown* and *Grogan v. Commonwealth.* In these cases the government was not charged with having caused the injury, but only with having failed to prevent it by proper exercise of regulatory functions which have elements appearing quasi-judicial and quasi-legislative in nature.

*Gas Service Co., Inc.*, 687 S.W.2d at 148-49.

In this case, MSD's implementation of a rule forbidding the placement of grates on drainage pipes does not constitute a regulatory function different from any performed by private industry and would not create a new kind of tort liability.[3] *See Gas Service Co., Inc.*, 687 S.W.2d at 149; *Siding Sales Inc., v. Warren Cnty. Water Dist. No. 1*, 984 S.W.2d 490, 493 (Ky. App. 1998). Rather, MSD's rule preventing placement of grates on drainage pipes squarely deals with the repair of its drainage system, which has been long regarded as a nonimmune

---

[3] A private corporation providing drainage services could promulgate a rule forbidding placement of grates on drainage pipes. And, the private corporation could, likewise, be liable if its failure to place a grate on a particular drainage pipe was negligent. Such does not constitute a new kind of tort liability; rather, it is the ancient tort of failure to maintain or repair a sewer/drainage system.

-20-

function of local government. A drainage pipe located close to homes in a residential subdivision that presents significant safety risks to those in its immediate vicinity could reasonably be viewed as needing "repair."

Moreover, as the failure to properly maintain or repair the drainage pipe by MSD does not constitute a quasi-legislative function, MSD is not entitled to claim immunity under subsections (a)-(e) of KRS 65.2003(3). *See Ashby*, 841 S.W.2d at 188 (holding that subsection (b) of KRS 65.2003(3) applied only "to situations which arise out of 'the exercise of judicial, quasi-judicial, legislative and quasi-legislative authority' and not to those which arise out of the exercise of other types of authority."). To trigger immunity under KRS 65.2003(3)(a)-(e), the underlying authority or function must be judicial, quasi-judicial, legislative, or quasi-legislative, and in this case, it is not.

In sum, we conclude that MSD is not entitled to immunity under CALGA and KRS 65.2003 and that the circuit court erred by concluding otherwise. Consequently, we reverse the November 17, 2020, opinion and order granting summary judgment in favor of MSD and dismissing Albright's tort claims.

For the foregoing reasons, the opinion and order of the Jefferson Circuit Court is reversed and remanded for proceedings consistent with this Opinion.

ALL CONCUR.


BRIEFS FOR APPELLANT:

Lee E. Sitlinger
Louisville, Kentucky

BRIEF FOR APPELLEE:

Adam T. Goebel
Eric M. Weihe
John W. Bilby
Louisville, Kentucky